JULIO PIÑÁN, querellante y recurrido *v.* MAYAGÜEZ SUGAR Co., INC. querellada y recurrente.

*Número:* 69 *Resuelto:* 6 de diciembre de 1961

*Amador Ramírez Silva, Tomás I. Nido, Gabriel Guerra Mondragón,* abogados de la recurrente; *Lorenzo Piñeiro Rivera y Juan Mari Bras,* abogados del recurrido; *Fiddler, González, Guillemard & Rodríguez (E. Negrón Rodríguez* en el Alegato) abogados de la Asociación de Productores de Azúcar de Puerto Rico, como *amici curiae.*

Sala integrada por el Juez Presidente Señor Negrón Fernández como Presidente de Sala, y los Jueces Asociados Señores Blanco Lugo y Dávila.

EL JUEZ ASOCIADO SEÑOR BLANCO LUGO emitió la opinión del Tribunal.

En 10 de enero de 1958, Julia Piñán presentó una querella contra la Mayagüez Sugar Co., en reclamación de horas adicionales trabajadas durante el período comprendido entre el inicio de la zafra del año 1950 y la terminación de la zafra del año 1957. Según las determinaciones de hecho del tribunal de instancia, el querellante prestó servicios durante el tiempo de zafra, no menos de veinte semanas incluso los domingos, en los años 1950 a 1953, ambos inclusive. En 1954 y 1955 trabajó durante todo el año, pero durante el

tiempo muerto, aunque devengó el mismo salario semanal, sólo rindió una jornada de cuarenta horas semanales. En 1956 trabajó una semana únicamente, y al siguiente año regresó durante la zafra y trabajó no menos de diecisiete semanas.

Contra la sentencia que declaró con lugar la querella se interpuso recurso de revisión. Se alega que el tribunal a quo erró al no declarar con lugar las defensas de prescripción de la acción y falta de causa de acción que oportunamente se plantearon en la contestación.

█ 1 La querella en este caso se radicó en 10 de enero de 1958, cuando ya había transcurrido más de un año de la vigencia de la Ley de Salario Mínimo de 1956 (Ley Núm. 96 de 26 de junio de 1956, 29 L.P.R.A. (Supl.) sec. 245 et seq.). Por tanto, la prescripción de la acción se rige por esta nueva disposición ([1]) y no por el artículo 1867 del Código Civil, 31 L.P.R.A. sec. 5297. *Agostini* v. *Tribunal Superior*, 82 D.P.R. 219, 230 (1961).

█ Como Piñán prestó servicios a la querellada hasta 1957, a la fecha en que se presentó la acción no había transcurrido el término de tres años a que se refiere la sección 32(a) de la Ley de Salario Mínimo de 1956 y que se deduce "desde que el empleado cesó en su empleo con el patrono". Aun cuando pudiera argüirse que en 1954 y 1955 hubo un cambio sustancial en la naturaleza de los servicios que el obrero venía prestando puesto que trabajó también durante el tiempo muerto con el mismo patrono, este hecho no derrotaría la reclamación, ya que el efecto de la sección 32(d) de la ley mencionada fue cambiar la doctrina hasta entonces vigente enunciada en *Avellanet* v. *Porto Rican Express Co.*, 64 D.P.R. 693 (1945) y *Vincenty* v. *Corona Brewing Corporation*, 73 D.P.R. 135 (1952) al disponer expresamente que no consti-

---

([1]) La sección 32(e) de la ley mencionada (29 L.P.R.A. sec. 246d(e)) lee "Lo dispuesto en esta sección en nada afectará los casos ya radicados en los tribunales o que se radiquen dentro de un (1) año después de entrar en vigor esta ley".

tuiría novación el cambio en la naturaleza de las labores del empleado. Y en cuanto a la alegación de que el período prescriptivo comienza a contarse a partir de la terminación de cada zafra anual, rechazamos idéntica contención en *Rodríguez* v. *Eastern Sugar Associates*, 82 D.P.R. 580 (1961). Si bien es cierto que ocurrió una ausencia inexplicable en 1956 durante cuya zafra el querellante trabajó solamente una semana, cuando se presentó la reclamación en enero de 1958 todavía no habían transcurrido tres años desde la terminación de la zafra de 1955. En otras palabras, presumiendo que esta ausencia tuvo el efecto de afectar la continuidad en la prestación de los servicios, la demanda siempre fue iniciada en tiempo oportuno.

2—La defensa de falta de causa de acción se funda en la alegación de que el querellante Piñán era un ejecutivo durante el período a que se contrae la reclamación, y que en consecuencia, le está vedado reclamar por labor realizada en exceso de cuarenta horas semanales. A los fines de disponer de este planteamiento es conveniente establecer previamente el alcance y las limitaciones impuestas por la legislación respecto al derecho de un empleado ejecutivo a reclamar por horas extras.

En sus comienzos la legislación sobre jornada de trabajo y condiciones del empleo no estableció distinción alguna en cuanto a su aplicación a empleados ejecutivos. En ausencia de una exclusión específica en la ley hemos interpretado que están comprendidos dentro de los "obreros", "trabajadores" o "empleados" que son beneficiarios de la legislación laboral. Véanse, en cuanto a salario mínimo: *Sierra* v. *Long Construction Co.*, 76 D.P.R. 417 (1954); *De Arteaga* v. *Club Deportivo*, 73 D.P.R. 444, 449–450 (1952) y *Tulier* v. *Autoridad de Tierras*, 70 D.P.R. 267, 270–273 (1949); jornada de trabajo: *Chabrán* v. *Bull Insular Line*, 69 D.P.R. 269 (1948); día de descanso: *Correa* v. *Mario Mercado e Hijos*, 72 D.P.R. 80, 88–89 (1951); procedimiento especial para

reclamaciones de salario: *Dovle* v. *Polypane Packing Co.*, 80 D.P.R. 224, 228–230 (1958); despido sin causa justificada: *Hull Dobbs Co.* v. *Tribunal Superior*, 82 D.P.R. 72, 84–85 (1961).

La Ley Núm. 379 de 15 de mayo de 1948 (Leyes, pág. 1255) excluye por primera vez a los ejecutivos de las disposiciones sobre horas regulares y horas adicionales de trabajo. A partir de esta fecha los ejecutivos—término que no se definió expresamente—no podían recibir o reclamar compensación por horas extra salvo a) bajo las disposiciones de algún decreto mandatorio promulgado antes de la vigencia de la Ley Núm. 379, que quedaron subsistentes en virtud del artículo 22 de la misma; o, b) como compensación por horas trabajadas durante el día de descanso, bajo los términos de la Ley Núm. 289 de 9 de abril de 1946 (Leyes, pág. 683). *Sierra* v. *Long Construction Co.*, 76 D.P.R. 417 (1954); *Caguas Bus Line* v. *Sierra, Comisionado*, 73 D.P.R. 743 (1952); *Correa* v. *Mario Mercado e Hijos*, 72 D.P.R. 80 (1951); *Rodríguez* v. *Fonalledas*, 72 D.P.R. 51 (1951).

Mediante la Ley Núm. 130 de 27 de abril de 1950 (Leyes pág. 337) se enmendó la sección 5 de la Ley Núm. 289 de 1946, *supra*, y se excluyó a los "profesionales, ejecutivos y administradores" de los beneficios del día de descanso concedidos a los empleados. Y mediante la Ley Núm. 131 de 27 de abril de 1950 (Leyes, pág. 337) se enmendó la definición de "obrero", "empleado" o "trabajador" de la Ley de Salario Mínimo para igualmente excluir a los profesionales, ejecutivos y administradores. [2] Se autorizó expresamente a la Junta de Salario Mínimo para definir estos términos.

Mediante un reglamento que comenzó a regir el día 15 de enero de 1952, el Secretario del Trabajo adoptó una definición del término "ejecutivo" a los fines de la exclusión que

---

[2] La Ley Núm. 96 de 26 de junio de 1956 (Leyes, pág. 623) que suplantó la ley original sobre salario mínimo contenía idénticas definiciones.

establece el artículo 19 de la Ley Núm. 379 de 15 de mayo de 1948, *supra*, idéntica a la contenida en el Reglamento Núm. 13 aprobado por la Junta de Salario Mínimo en 8 de agosto de 1951. [3]   En ambos se define el término ejecutivo como sigue:

"(a) Cualquier empleado (1) cuyo deber primordial consista en la dirección de la empresa en que trabaja o en la dirección de un habitualmente reconocido departamento o subdivisión de la empresa; y

"(2) que habitual y regularmente dirija el trabajo de otros dos o más empleados de la empresa o del tal departamento o subdivisión de la empresa; y

"(3) que tenga la autoridad de emplear y despedir otros empleados o cuyas sugestiones y recomendaciones sobre el empleo y despido de otros empleados y en cuanto al mejoramiento y ascenso o en relación con cualquier otro cambio de status de otros empleados hayan de recibir especial atención; y

"(4) que habitual y regularmente ejerza facultades discrecionales; y

"(5) que no dedique más del 20% de las horas trabajadas en la semana de labor a actividades que no estén directa e íntimamente relacionadas con el desempeño del trabajo descrito en el párrafo (a), inciso (1) al (4) de este artículo; *Disponiéndose* que este inciso (5) no será aplicable en el caso de un empleado que esté él solo a cargo de un establecimiento independiente o de una rama del establecimiento físicamente separado del mismo,

---

[3] Este reglamento fue revisado en 17 de diciembre de 1959, con vigencia en 15 de enero siguiente.   La única modificación en cuanto a los requisitos para calificar como ejecutivo contenida en esta nueva revisión es en el inciso (6) del apartado (A), que ahora dispone:  "(6) que reciba por sus servicios una compensación fija (por día, semana, quincena o períodos mayores) equivalente al sueldo semanal que resulte multiplicado por sesenta (60) el tipo mínimo por hora más alto que le sea aplicable por ley del Estado Libre Asociado de Puerto Rico o por decreto mandatorio de la Junta de Salario Mínimo de Puerto Rico a las actividades en conexión con las cuales ejerce sus funciones de ejecutivo, excluyendo alimentos, vivienda y otros servicios; *disponiéndose,* sin embargo, que el salario semanal nunca deberá ser menor de treinta y cinco dólares ($35.00) cuando dicha compensación computada en la forma ya expresada resultare menor de esta suma."   La validez de la definición de "ejecutivo" del Reglmento Núm. 13 fue sostenida en *Sierra* v. *Mario Mercado e Hijos,* 81 D.P.R. 314, 322–324 (1959).

o que sea dueño de por lo menos 20% del interés de la empresa en que esté empleado; y

"(6) que reciba por sus servicios una compensación fija (por día, semana, quincena o períodos mayores) equivalente a un salario semanal no menor de $30.00, excluyendo alimentos, vivienda u otros servicios; o

"(b) Cualquier empleado (1) cuyo trabajo cumpla con los requisitos dispuestos en el párrafo (a), inciso (1) y (2) de este artículo; y

"(2) que reciba por sus servicios una compensación fija (por día, semana, quincena o períodos mayores) equivalente a un salario semanal no menor de $100, excluyendo alimentos, vivienda u otros servicios."

Consideremos ahora la aplicación de la legislación expuesta a los hechos del presente caso que cubren una reclamación por trabajo realizado desde 1950 a 1957. Se admite que el querellante Piñán trabajó durante el período a que se contrae la querella un total de 56 horas semanales, o sea 8 horas diarias durante los siete días de la semana. Siendo ello así, tiene derecho a recobrar hasta el día 27 de abril de 1950— fecha de la vigencia de las Leyes Núm. 130 y 131—a tiempo doble por las horas trabajadas durante el día de descanso, y a tiempo sencillo por las horas trabajadas en exceso de 40 horas semanales. Cf. *Sierra* v. *Mario Mercado e Hijos*, 81 D.P.R. 314 (1959). Desde esta fecha en adelante, su derecho a compensación depende de si efectivamente era o no un ejecutivo, para cuya determinación debemos considerar a partir del 15 de enero de 1952 los requisitos que establece el reglamento promulgado por el Secretario del Trabajo a que hemos hecho referencia, y para el período comprendido entre el 27 de abril de 1950 y el 15 de enero de 1952, en ausencia de manifestación administrativa sobre el particular, tomaremos en consideración todos los hechos relevantes del caso según los determinó establecidos el tribunal de instancia.

Es apropiado, por tanto, transcribir las determinaciones de hechos que formuló el tribunal de instancia sobre la naturaleza de las funciones que desempeñaba el querellante en la

factoría de azúcar de la querellada ya que su salario semanal nunca fue inferior de treinta dólares:

"2do. El querellante era uno de tres empleados de la factoría de la querellada, indistintamente llamados mayordomos o listeros, que se turnaban en períodos de ocho horas diarias cada uno en la dirección de un número no menor, cada turno, de 30 empleados u obreros de la factoría. El trabajo del querellante al igual que el de los otros mayordomos o listeros consistía en preparar las listas de los obreros correspondientes a cada turno y llevar una relación diaria de las horas trabajadas por cada uno. Este aspecto del trabajo tomaba una parte considerable de su rutina diaria. El resto de sus responsabilidades consistía en estar pendiente de que los obreros de su turno estuviesen atendiendo debidamente a sus faenas. Cualquier anormalidad que hubiera, bien en el desempeño de la obligación de algún trabajo, o en cualquier otro asunto a su cargo el querellante debía informarlo inmediatamente a las oficinas de administración de la factoría. *El querellante no contrataba los obreros, ni tenía autoridad para despedirlos.* Ello no obstante, cuando faltaba algún obrero de los que le asignaban a su turno él escogía el sustituto; cuando un obrero no cumplía con su deber él daba la queja correspondiente a la administración y sus recomendaciones al efecto eran generalmente atendidas. Nada hay en la prueba, por otro lado, que demuestre que las funciones del querellante como mayordomo o listero fuesen identificadas como formando en sí un departamento o subdivisión reconocida de la empresa querellada." (Bastardillas nuestras.)

■■■■ Bajo estos hechos no creemos que pueda sostenerse que el querellante era un empleado ejecutivo. Esto es especialmente cierto si se considera que en términos generales sus funciones no envolvían el uso de discreción alguna, que su labor principal era de naturaleza más bien rutinaria u oficinesca. Como cuestión de hecho su supervisión y control sobre otros empleados era prácticamente ninguna. No se demostró que Piñán ordenara la realización de tarea alguna; no empleaba ni despedía obreros. En circunstancias parecidas hemos resuelto que un "listero" no es un ejecutivo, *Sierra* v. *Mario Mercado e Hijos*, 81 D.P.R. 314, 317 (listero de faenas

agrícolas) ; *Tulier* v. *Autoridad de Tierras*, 70 D.P.R. 267 (1949) ; cf. *Correa v. Mario Mercado e Hijos*, 72 D.P.R. 80 (1951) ; *De Arteaga* v. *Club Deportivo*, 73 D.P.R. 444 (1952). Debe recordarse que en cuanto a la definición de "ejecutivo" del reglamento aludido es preciso que concurran todos los factores allí enumerados. Además, la exclusión de un empleado de los beneficios de la legislación laboral por tratarse de un ejecutivo debe ser clara. Se impone una interpretación restrictiva. *Ralph Knight* v. *Mantel*, 135 F.2d 514 (CCA 8, 1943) ; *Bernick* v. *Coddon*, 65 F. Supp. 89 (Minn. 1946) ; *Anderson* v. *Federal Cartridge Corporation*, 62 F. Supp. 775, 779 (Minn. 1945).

Siendo ello así, no erró el tribunal recurrido al resolver que el querellante no era un ejecutivo. Hemos revisado los cálculos hechos para dictar la sentencia y se ajustan a las normas que señalamos en *Laborde* v. *Eastern Sugar Associates*, 81 D.P.R. 478, 487 et seq. (1959).

*Se confirmará la sentencia dictada por el Tribunal Superior, Sala de Mayagüez, en 30 de octubre de 1958.*