MARÍA J. CALDERÓN, querellante y recurrida, *v.* ESSO STANDARD OIL CO. OF PUERTO RICO, querellada y recurrente.

*Número:* R-64-31          *Resuelto:* 25 de marzo de 1965

*Beverley, Castro & Rodríguez Lebrón,* abogados de la recurrente; *Demetrio Fernández Quiñones, Manuel I. Medina Aymat* y *Juan Hernández Valle,* abogados de la recurrida.

Sala integrada por el Juez Presidente Interino Señor Pérez Pimentel y los Jueces Asociados Señores Blanco Lugo y Ramírez Bages.

EL JUEZ ASOCIADO SEÑOR RAMÍREZ BAGES emitió la opinión del Tribunal.

■ A los efectos de resolver, debemos considerar en este caso si la recurrida, María J. Calderón, era o no era una ejecutiva de la recurrente, Esso Standard Oil Co. of Puerto Rico. No existe controversia con respecto a que la recurrida trabajó horas extras para la recurrente, de manera que de no ser una ejecutiva de dicha empresa, tiene derecho a que se lo pague por las mismas y a recobrar la penalidad prescrita por ley.

Reclamó la recurrida el pago de horas extras durante los siguientes tres períodos en que su salario era el indicado a continuación:

| PERIODOS | | | SALARIOS | |
|---|---|---|---|---|
| 1. Desde 8/10/59 | a | 5/31/60 | $400 | mensuales |
| 2. " 6/ 1/60 | a | 11/30/61 | 400 | " |
| 3. " 12/ 1/61 | a | 8/12/62 | 480 | " |

Visto el caso, el tribunal de instancia concluyó:

"10.—Que la querellante durante el período de agosto 10 de 1959 a mayo 31 de 1961 [*sic*] trabajó 2 horas extras diarias que no le fueron pagadas, en la forma siguiente:

| PERIODO | HORAS EXTRAS | SALARIO | TIPO SENCILLO | TIPO DOBLE | TOTAL |
|---|---|---|---|---|---|
| 8-10-59 a 5-31-60 | 504 en 42 semanas a 12 horas semanales | $92.31 semanal | $1.92 | $3.84 | $1,935.36 |

"7.—Durante el período de agosto 10 de 1959 a mayo 31 de 1960 en que la querellante devengaba un sueldo de $400.00 mensuales ($92.31 semanales) ésta no era una administradora o ejecutiva, ya que no reunía todos los requisitos del Reglamento Núm. 13 de la Junta de Salario Mínimo (1) *Morales* v. *Tribunal*

*Superior,* 84 D.P.R. 123 (1961) ; *Piñán* v. *Mayagüez Sugar Co.,* 84 D.P.R. 89 (1961) ; *Kaczanowski* v. *Home State Bank,* D.C. Wis.—1948; 77 F.Supp. 602; por faltar el requisito relativo al salario devengado, y por el fundamento adicional de que a la luz de la primera parte del referido reglamento, dedicaba durante dicho período más de un 20% de labor a actividades que no estaban directa o íntimamente relacionadas con sus funciones de ejecutiva. (Véase Exhibit 29 Dda.—donde aparece que según la hoja descriptiva del trabajo realizado dedicaba un 24% a la operación de las máquinas.)" ([1])

---

[1] El Reglamento Núm. 13 que define el término "ejecutivo" ha sido modificado en varias ocasiones. Este reglamento fue aprobado por el Secretario del Trabajo y promulgado en 26 de diciembre de 1951. Fue derogado y una revisión del mismo fue promulgado en 17 de diciembre de 1959 con vigencia en 15 de enero de 1960 (29 R.&R.P.R. sec. 286). Según este reglamento, constituye un ejecutivo:

"(A) cualquier empleado que reúna los siguientes requisitos:

(i) que su deber primordial consista en la dirección de la empresa en que trabaja o en la dirección de un habitual reconocido departamento o subdivisión de la empresa;

(ii) que habitual y regularmente dirija el trabajo de otros dos o más empleados de la empresa o de tal departamento o subdivisión de la misma;

(iii) que tenga la autoridad de emplear y despedir otros empleados o cuyas sugestiones y recomendaciones sobre el empleo y despido de otros empleados y en cuanto al mejoramiento y ascenso o en relación con cualquier otro cambio de status de otros empleados hayan de recibir especial atención;

(iv) que habitual y regularmente ejerza facultades discrecionales;

(v) que no dedique más del 20 por ciento de las horas trabajadas en la semana de labor a actividades que no estén directa e íntimamente relacionadas con el desempeño del trabajo descrito en el párr. (A), subpárrs. (i) al (iv) de este apartado. Disponiéndose que este subpárr. (v) no será aplicable en el caso de un empleado que esté él solo a cargo de un establecimiento independiente o de una rama del establecimiento físicamente separado del mismo, o que sea dueño de por lo menos el 20 por ciento del interés de la empresa en que esté empleado; y

(vi) que reciba por sus servicios una compensación fija (por día, semana, quincena o períodos mayores) equivalente al sueldo semanal que resulte multiplicando por 60 el tipo mínimo por hora más alto que le sea aplicable por ley del Estado Libre Asociado de Puerto Rico o por decreto mandatorio de la Junta de Salario Mínimo de Puerto Rico a las actividades en conexión con las cuales ejerce sus funciones de ejecutivo, excluyendo alimentos, vivienda y otros servicios. Disponiéndose, sin embargo, que el salario semanal nunca deberá ser menor de $35 cuando dicha compensación computada en la forma ya expresada resultare o sea

En tal virtud, el referido tribunal declaró con lugar la querella en este caso y condenó a la recurrente a pagar a la recurrida la suma de $1,935.36 por horas extras trabajadas y no pagadas durante el primer período antes indicado más una suma igual por concepto de penalidad, más la suma de $700 para honorarios de abogado. Denegó la querella en cuanto a los siguientes dos períodos porque:

"9.—Durante los dos últimos períodos de tiempo envueltos en la querella, o sea, desde junio 1 de 1960 a noviembre de 1961 y desde diciembre 1 de 1961 hasta agosto 12 de 1962, fecha en que cesó en su empleo con la querellada, la querellante recibía por sus servicios una compensación fija equivalente a un salario semanal no menor de Cien Dólares, . . ."

Durante el primer período en cuestión, y de acuerdo con las conclusiones de hecho del tribunal sentenciador:

"2.—El Departamento de IBM era un reconocido departamento o subdivisión de la querellada, estando integrado por un personal regular y permanentemente adscrito al mismo, siendo la misión de dicho Departamentto la de prestar servicios a los demás departamentos de la compañía mediante el procesamiento de data e información en forma mecanizada y a través de máquinas IBM.

"3.—El deber primordial de la querellante consistía en la dirección del referido departamento o subdivisión y ésta dedicaba la mayor parte de su tiempo laborable a labores gerenciales, tales como: entrevista, selección y entrenamiento de empleado; recomendación de fijación y ajustes en la compensación de su-

---

menor de esta suma, o cuando no hubiere salario aplicable por ley o por decreto; o

(B) (i) cualquier empleado cuyo trabajo cumpla con los requisitos dispuestos en el párr. (A), (i) y (ii) de este apartado (1) ; y

(ii) que reciba por sus servicios una compensación fija por (día, semana, quincena o períodos mayores) equivalente a un salario semanal no menor de $100, excluyendo alimentos, vivienda u otros servicios."

El texto del Reglamento Núm. 13 vigente hasta el 15 de enero de 1960 disponía en su inciso (a) (6), equivalente al inciso (a) (vi) anterior, lo siguiente:

"(6) que reciba por sus servicios una compensación fija (por día, semana, quincena o períodos mayores) equivalente a un salario semanal no menor de $30.00, excluyendo alimentos, vivienda u otros servicios; o". . . .

balternos; dirección del trabajo de los empleados adscritos al departamento supervisado por la querellante; mantenía records de las labores que realizaban sus subalternos para facilitar la supervisión o control; hacía apreciación de la eficiencia de sus subalternos para los fines de recomendar promociones o cambios en el status de tales empleados; llamaba la atención y supervisaba las labores de sus subalternos; planificaba el trabajo que éstos habían de realizar; asignaba trabajo a los empleados bajo sus órdenes y controlaba la afluencia y tipo de materiales, suministro y equipo.

"4.—La querellante en forma habitual y regular dirigía el trabajo de los empleados adscritos a la sección IBM de la querellada, fluctuando el número de tales empleados entre ocho a diez, durante los períodos de tiempo comprendidos en la querella.

"5.—La querellante hacía sugestiones y recomendaciones sobre el empleo, despido, mejoramiento, ascenso y cambio en el status de los empleados adscritos a la sección IBM, y sus sugestiones y recomendaciones sobre el particular recibían especial atención de la gerencia de la querellada.

"6.—La querellante ejercía facultades discrecionales en forma habitual y regular, particularmente al entrevistar, seleccionar y entrenar personal, al hacer recomendaciones en cuanto a fijación y ajustes en la compensación de éstos, al dirigir el trabajo de sus subalternos y al apreciar la eficiencia de éstos para recomendar promociones y cambios en el status; al planificar y supervisar el trabajo de sus subalternos y al determinar y controlar la afluencia y tipo de materiales, suministro y equipo en la sección IBM. También ejercía discreción la querellante al determinar cuándo y qué empleados subalternos habrían de trabajar tiempo extra y al servir de consultora y consejera en problemas relativos a operaciones y trabajos de IBM.

"8.—Durante todo el tiempo que trabajó para la querellada, la querellante dedicaba más de un 80% de su tiempo laborable a actividades directa e íntimamente relacionadas con sus funciones gerenciales y de supervisión, tales como revisión de los requerimientos de trabajo enviados a la sección IBM y mantenimiento de control para la ejecución a tiempo de dicho trabajo; mantenimiento del control de producción en la sección IBM y fiscalización del trabajo realizado por los subalternos a fin de cumplir con el schedule de trabajo; revisión del trabajo realizado en la sección;

sirviendo como consultora en problemas relativos a mecanización del trabajo a través del sistema IBM, entrenando nuevos empleados en la sección; controlando los suministros de materiales y equipo; diseñando nuevas formas de codificación; evaluando el personal adscrito a la sección y recomendando promociones, aumentos y cesantías, estudiando los requerimientos y necesidades de equipo para recomendar cambios; supervisando y fiscalizando la labor de sus subalternos para mejorar la eficiencia; y ayudando en la preparación del alambrado de las máquinas IBM." [2]

No tenemos duda de que a la luz de la doctrina que establecimos en *Morales*, supra, y *Piñán*, supra, la recurrida ejercía funciones de ejecutivo de la recurrente, quedando como única cuestión a resolver, si se cumplió, durante el referido primer período de su reclamación con el requisito de no dedicar más de un 20% de las horas trabajadas a actividades que no estén directa e íntimamente relacionadas (1) con la dirección del referido departamento IBM y (2) con la dirección del trabajo de otros dos o más empleados de la recurrente o del referido departamento.

No conforme, la recurrente instó la correspondiente petición de revisión en la que imputa la comisión por el tribunal de instancia de los siguientes dos errores:

"1.—. . . erró el Tribunal Inferior al resolver que durante el período comprendido entre agosto 10 de 1959 y mayo 31 de 1960, en que la querellante devengaba un sueldo mensual de $400.00 (equivalente a $92.31 semanales), no reunía los requisitos del Reglamento Núm. 13 de la Junta de Salario Mínimo relativos al salario devengado."

Se admitió que este error se había cometido, pues el requisito de salario mínimo en la clasificación de ejecutivo era de $30 semanales hasta enero 15 de 1960 y de $35 semanales de esa fecha en adelante y durante esa época no hay duda

---

[2] Evidentemente el juez sentenciador quiso decir que la querellada dedicó menos de un 80% de su tiempo a funciones gerenciales, conforme a lo indicado en su conclusión Núm. 7, transcrita al comienzo de esta opinión.

que la recurrida recibía un salario de $400 al mes, o sea, unos $92.31 semanales. Pero, arguye la recurrente además, que en realidad el salario de la recurrida durante el primer período en cuestión cumplía con las disposiciones especiales del inciso (B) (i) y (ii) del referido reglamento, pues el monto de dicho salario excedía de $100 semanales ya que lo constituía el salario básico de $92.31 semanales, más una contribución mensual y otra anual variable que la recurrente pagaba para beneficio de la recurrida que equivalía a unos $8.50 semanales adicionales; que estos pagos adicionales obedecían, en parte, a un plan de ahorros que junto con una contribución del empleado se depositaba en el Chase Manhattan Bank como fiduciario de dicho plan de ahorro, y en parte, como mero regalo o bonificación anual variable; que el tribunal sentenciador no consideró esta situación; que el reglamento en cuestión comprende "cualquier clase de compensación pagada por servicios" excluyendo únicamente y por mandato expreso del reglamento, "alimentos, viviendas y otros servicios similares"; que estos pagos adicionales deben incluirse a los efectos de determinar el ingreso sujeto al pago de la contribución sobre ingresos en casos como el de la recurrida. Arguye la recurrida, en contrario, que este fundamento no se expuso en la petición de revisión en este caso, como lo exige la Regla 53.3 de las Reglas de Procedimiento Civil y, por lo tanto, no procede invocarlo y discutirlo luego de expedido el auto de revisión; que la contribución bajo el referido plan no constituye parte de la paga regular de la recurrida; que la doctrina establecida en *Phillips Inc.* v. *Walling*, 324 U.S. 490 (1945), (³) exige que, al determinar

---

(³) Se dijo en *Phillips*, supra, que:

"Cualquier exención o exclusión de tal legislación humanitaria [se refiere a la Ley de Normas Razonables de Trabajo] debe ser interpretada restrictivamente. El extender una exención a aquellos que no estén claramente excluídos de la letra o en el espíritu de la ley, constituirá un abuso de proceso de interpretación o una frustración de la voluntad expresada por el pueblo." Citamos esta doctrina en *Sierra, Comisionado* v. *Llamas*, 73 D.P.R. 908, 916 (1952).

136

el salario a los efectos de excluir a un empleado del beneficio de paga adicional por trabajo rendido durante horas extras, se excluya la contribución en cuestión que no se concedió por concepto de servicios prestados y sí con el propósito de crear en los empleados el hábito de ahorrar, condicionándose a que éstos a su vez ahorren determinado por ciento de su salario. En vista de que podemos disponer del caso al determinar que el tribunal de instancia incurrió en el error que discutimos a continuación, resulta innecesario considerar esta cuestión.

2.—"Erró el Tribunal Inferior al resolver como fundamento adicional de su sentencia que la querellante, durante el referido primer período de trabajo, dedicaba más de un 20% de labor a actividades que no estaban directa e íntimamente relacionadas con sus funciones de ejecutivo."

█ La conclusión del tribunal sentenciador al efecto de que la recurrida dedicaba más del 20% de su labor mensual a actividades que no estaban relacionadas directa e íntimamente con sus funciones de ejecutivo, está basada en que el apartado Núm. 10 de la hoja descriptiva del trabajo realizado por la recurrida indicaba que ésta dedicaba el 24% de su tiempo laborable mensual a "ayudar en la operación de máquinas cuando fuere necesario." De la evidencia que pasamos a resumir, resulta evidente que la solución de la controversia en este caso depende de la interpretación y alcance que se le dé a ese apartado Núm. 10 de la referida hoja descriptiva y, por lo tanto, estamos en la misma posición que el tribunal de instancia para examinar y considerar la evidencia presentada con respecto a toda esta cuestión. *Morales* v.

En *Piñán*, supra, dijimos que:

"Debe recordarse que en cuanto a la definición de 'ejecutivo' del reglamento aludido es preciso que concurran todos los factores allí enumerados. Además, la exclusión de un empleado de los beneficios de la legislación laboral por tratarse de un ejecutivo debe ser clara. Se impone una interpretación restrictiva." *Mitchell* v. *Kentucky Finance Co.*, 359 U.S. 290, 295 (1958); *Dalehite* v. *United States*, 346 U.S. 15, 31 (1952).

*Tribunal Superior*, 84 D.P.R. 123 (1961), escolio 3, pág. 130; *Central Igualdad Inc.* v. *Srio. Hacienda*, 83 D.P.R. 45, 52 (1961); *Castro* v. *Meléndez*, 82 D.P.R. 573, 575 (1961); *Sanabria* v. *Sucn. González*, 82 D.P.R. 885, 995 (1961).

La prueba demostró que el 24% del tiempo laboral que la recurrida dedicaba a "ayudar en la operación de máquinas cuando fuere necesario" incluía no sólo la operación productiva de las máquinas que claramente es trabajo manual en forma igual a como lo hacían sus subalternos, indubitablemente no exento del requisito de pago por horas extras según el Reglamento Núm. 13 a que nos venimos refiriendo, sino que también comprendía (a) el trabajar junto a sus subalternos en la discusión y solución de los problemas relativos a la operación y funcionamiento de las máquinas IBM; (b) corregir fallas en el funcionamiento de dichas máquinas; (c) abastecer y prepararlas para obtener el mejor resultado en las labores de sus subalternos mediante el alambrado de las mismas y el diseño de formularios y, en general; (d) asistir y ayudar a sus subalternos en el procedimiento del trabajo de las máquinas. Hubo prueba de que de un 10% a un 15% del tiempo laborable de la recurrida lo dedicaba ella a la operación manual de las máquinas en cuestión en su producción normal y corriente. La cuestión a determinar es si el balance hasta el 24% de su tiempo laborable, dedicado según la prueba, al alambrado de las máquinas, o sea, a la preparación de éstas como paso anterior, necesario e indispensable, para el funcionamiento de producción normal y corriente de dichas máquinas, y a las otras actividades incidentales que acabamos de relacionar, constituyen trabajo no exento del requisito de pago de horas extras en este caso. A esos efectos está en orden que hagamos un breve análisis de la prueba en este caso.

La recurrida testificó que durante el referido primer período de la reclamación tenía a su cargo alrededor de seis empleados y 8 máquinas; supervisaba el trabajo de dichos

empleados y trabajaba a veces como operadora de máquina por no haber empleados suficientes; al comenzar el día de trabajo tardaba unos 20 a 25 minutos en explicarles a ciertos empleados lo que tenían que hacer y luego "empezaba a sortear, tabular, estar pendiente de los cables que venían de afuera, hacer todo el alambrado" y los paneles de las máquinas, dos o tres al día; trabajaba todo el día en las máquinas y en alambrarlas, la mayor parte del tiempo, mitad y mitad, o sea, la mitad del tiempo en operar y la otra mitad en preparar las máquinas; que la hoja descriptiva de sus funciones es correcta en cuanto a las labores que hacía, pero no en cuanto al por ciento; que esa hoja se preparó y firmó por la recurrida y fue aprobada por su supervisor inmediato; que el diseño de formularios y el alambrado eran la parte más importante y que más tiempo le tomaba; que el alambrado es como hacer la matriz del trabajo para que los demás empleados trabajen, la base sobre la cual trabajan los demás operadores; que el alambrado de un panel le tomaba más tiempo que el resto del trabajo en sí y esa operación preparatoria había que hacerla con relación a cada tipo de trabajo que se requería de la oficina a cargo de la recurrida; esto era un trabajo especializado, no lo hacían los empleados corrientes; el diseño de formularios era de similar naturaleza y categoría; que dedicaba el 20% de su tiempo a supervisión y el 80% a trabajo físico que incluía el alambrado de máquinas y diseño de formularios que eran los trabajos que más tiempo le tomaban; que realizaba el 33% del trabajo de las máquinas y que dentro de ese 33% se incluía el alambrado de paneles, que en algunos meses dedicó al trabajo de "ayudar en la operación de máquinas cuando fuere necesario" más tiempo que el que aparece en la referida hoja descriptiva de sus funciones, o sea, un 30% de su tiempo, pero no lo hizo constar así en dicho documento.

El señor Jorge Blay, jefe de la recurrida, testificó que el trabajo de "ayudar en la operación de las máquinas" con-

sistía de alambrarlas, sentarse con los empleados a discutir con ellos los problemas, por qué el trabajo no salía a tiempo, si había alguna máquina rota o un alambrado mal hecho o algún alambre que se soltaba, investigar las fallas que los empleados estaban teniendo para no sacar su trabajo a tiempo y trabajar directamente en las máquinas y que todo esto le tomaba a la recurrida de un 24 a un 25% de su tiempo; que la recurrida dedicaba de un 10 a un 15% de su tiempo al alambrado, corrección y revisión de los paneles de las máquinas y dedicaba de un 10 a un 15% de su tiempo a trabajar directa y exclusivamente en las máquinas, ocurriendo esto último como parte del entrenamiento de un empleado o cuando éste tenía algún problema en el procedimiento o, en casos de ausencias de empleados y, por último, "también en emergencias, en los cierres del año también . . ." Testificó Blay que "el alambrado de paneles es la parte más importante y más complicada del trabajo de tabulación ya que el panel de alambrado es la parte de la máquina que indica qué es lo que se va a producir por medio de los alambres, y por medio de los impulsos que produce la máquina es que se obtiene la información necesaria en cuanto a la forma puesta. También requiere ciertos conocimientos ya que la forma tiene que establecerse de acuerdo con el alambrado y de acuerdo con los martillos o los tipos de la máquina que va a imprimir de manera que no le salga impresa en la parte derecha lo que tenía que salir impreso en la parte izquierda y así sucesivamente, de manera que la forma [formulario] hay que diseñarla de tal manera de acuerdo con el alambrado o de acuerdo con el proceso que se va a seguir." Admitió este testigo que la recurrida trabajaba hora y media a dos horas extras todos los días y uno o tres domingos al año en relación con el cierre financiero y testificó que la labor en esas horas extras consistía mayormente en "Trabajos de coordinación de ver lo que se produjo durante el día, planificar para el día siguiente, en la organización y en coordinar el trabajo,

los materiales, etc., para el día siguiente, revisando su schedule de trabajo para ver cuál era el próximo trabajo que estaba en turno y así sucesivamente, discutiendo asuntos de personal, problemas de las máquinas o de tal o cual máquina que se llamó a la IBM al ingeniero y no ha llegado, y el trabajo se está atrasando por tal o cual razón . . ." y en ocasiones trabajaba en esas horas extras con los empleados del segundo turno y en alambrado de paneles.

Tres conclusiones resultan evidentes del anterior resumen de la prueba pertinente a la cuestión que venimos considerando, a saber: (a) que el trabajo de operación productiva de las máquinas y el de la preparación, o sea, el de alambrado, preparación de formularios y asistencia de empleados en los problemas con las máquinas, etc., están incluidos en el renglón Núm. 10 de "ayuda en la operación de máquinas" dentro de la hoja descriptiva de las funciones de la recurrida; (b) que, a lo sumo ella dedicaba un 30% de todo su tiempo a las funciones relacionadas en el referido renglón Núm. 10 y que; (c) más o menos la mitad del tiempo lo dedicaba a la operación productiva de las máquinas como lo haría cualquier otro empleado corriente bajo sus órdenes. De manera que a los fines de resolver la controversia planteada por el apuntamiento de la recurrente, es necesario determinar si el tiempo dedicado a la preparación de las máquinas y tareas incidentales a esa función, constituyen actividades que no estén directa e íntimamente relacionadas con la dirección de la empresa, y la dirección del trabajo de dos o más empleados de la empresa y con el control de los empleados bajo sus órdenes. Se estableció, y el juez de instancia así lo determinó, que las recomendaciones de la recurrida sobre el empleo y despido, mejoramiento, ascenso o cambio de *status* de los empleados bajo sus órdenes, recibían especial atención y que ejercía habitual y regularmente facultades discrecionales.

■ Concluimos que las actividades relacionadas con la preparación de las máquinas está directa e íntimamente ligada a la función general del cargo al cual fue ascendida la recurrida al comienzo del primer período de su reclamación, pues se trata de labor auxiliar, necesaria y preparatoria de la labor de producción de los empleados supervisada por la recurrida y, de la que era responsable. Dicha labor de preparación era compleja, delicada y exigía mayor habilidad de la que corrientemente necesita o utiliza un empleado de producción o a cargo de operar una máquina (*machine tender*). De manera que en operaciones pequeñas como la que está envuelta en este caso, dicha labor realizada por un ejecutivo está directa o íntimamente relacionada con la responsabilidad de éste por el trabajo de sus subordinados y la calidad del producto final. Boletín—Explicativo—Parte 541 del Depto. del Trabajo de los EE. UU., Subdiv. 541-106. (⁴)

------

(⁴) This phase brings within the category of exempt work not only the actual management of the department and the supervision of the employees therein, but also activities which are closely associated with the performance of the duties involved in such managerial and supervisory functions or responsibilities. The supervision of employees and the management of a department include a great many directly and closely related tasks which are different from the work performed by subordinates and are commonly performed by supervisors because they are helpful in supervising the employees or contribute to the smooth functioning of the department for which they are responsible. Frequently such exempt work is of a kind which in establishments that are organized differently, or which are larger and have greater specialization of function, may be performed by a nonexempt employee hired especially for that purpose. Illustration will serve to make clear the meaning to be given the phrase 'directly and closely related'.

· · · · · · · ·

"(d) *Set-up work is another illustration of work which may be exempt* under certain circumstances if performed by a supervisor. The nature of set-up work differs in various industries and for different operations. Some set-up work is typically performed by the same employees who perform the 'production' work: that is, the employee who operates the machine also 'sets it up' or adjusts it for the particular job at hand. Such set-up work is part of the production operation and is not exempt. *In other instances the setting up of the work is a highly skilled operation which the ordinary production worker or machine tender typically does not perform.* In some plants, particularly large ones, such set-up work may be

*Por las razones expuestas, se revocará la sentencia y se declarará sin lugar la querella, en este caso.*

performed by employees whose duties are not supervisory in nature. *In other plants, however, particularly small plants, such work is a regular duty of the executive and is directly and closely related to his responsibility for the work performance of his subordinates and for the adequacy of the final product. Under such circumstances it is exempt work.*

"(e) Similarly, *a supervisor who spot checks and examines the work of his subordinates to determine whether they are performing their duties properly, and whether the product is satisfactory, is performing work which is directly and closely related to his managerial and supervisory functions.*

"However, this kind of examining and checking must be distinguished from the kind which is normally performed by an 'examiner', 'checker', or 'inspector' and which is really a production operation rather than a part of the supervisory function.

"(f) Watching machines is another duty which may be exempt when performed by a supervisor under proper circumstances. Obviously the mere watching of machines in operation cannot be considered exempt work where, as in certain industries in which the machinery is largely automatic, it is an ordinary production function. Thus, an employee who watches machines for the purpose of seeing that they operate properly or for the purpose of making repairs or adjustments is performing nonexempt work. On the other hand, *a supervisor who watches the operation of the machinery in his department in the sense that he 'keeps an eye out for trouble' is performing work which is directly and closely related to his managerial responsibilities. Making an occasional adjustment in the machinery under such circumstances is also exempt work.*" (Énfasis nuestro.)