LUIS LÓPEZ SANTOS, peticionario, *v.* TRIBUNAL SUPERIOR DE PUERTO RICO, SALA DE SAN JUAN, HON. FRANCISCO ESPINOSA ROBLEDO, JUEZ, demandado; BIRD'S RESTAURANT, INC., interventora.

*Número:* O-67-157       *Resuelto:* 16 de octubre de 1970

*Carmelo Ávila Medina* y *Roberto Ávila Rivera,* abogados del peticionario; *Francisco Ponsa Feliu,* abogado de la interventora.

EL JUEZ ASOCIADO SEÑOR MARTÍNEZ MUÑOZ emitió la opinión del Tribunal.

Acordamos revisar la resolución del tribunal de instancia considerando al peticionario Luis López Santos un ejecutivo de la recurrida Bird's Restaurant, Inc., y que, por lo tanto, no le son aplicables las disposiciones de la Ley Núm. 379 de 15 de mayo de 1948, 29 L.P.R.A. sec. 271–278 fijando un máximo a la jornada de trabajo en Puerto Rico y proveyendo el pago de una doble retribución por las horas trabajadas en exceso de la jornada legal.[1]

El 18 de agosto de 1961 Luis López Santos radicó una querella reclamando $16,388.00 por concepto de horas extras alegadamente trabajadas para la empresa querellada Bird's Restaurant, Inc., desde el 3 de noviembre de 1949 hasta el 13 de mayo de 1960, más una suma igual de penalidad, tra-

---

[1] La Ley Núm. 379 excluye por primera vez a los "ejecutivos" de las disposiciones sobre horas regulares y horas adicionales de trabajo. A partir del 15 de mayo de 1948 los "ejecutivos", término que no se definió, no podían reclamar compensación por horas extras trabajadas, salvo en dos casos, a saber: (a) bajo algún decreto mandatorio promulgado antes de la vigencia de dicha ley; o (b) por horas trabajadas durante el día de descanso, bajo las disposiciones de la Ley Núm. 289 de 9 de abril de 1946. *Piñán* v. *Mayagüez Sugar Co., Inc.,* 84 D.P.R. 89 (1961).

mitada bajo el procedimiento fijado por la Ley Núm. 10 de 14 de noviembre de 1917, según enmendada. [2]

Por acuerdo de las partes y la anuencia del tribunal de instancia, más de cinco años después de radicada la querella, se ventiló en audiencia preliminar la defensa especial de la querellada en el sentido de que el querellante no tiene derecho a la compensación solicitada por haber sido un "ejecutivo" en la empresa.

Luis López Santos comenzó a trabajar para Bird's Restaurant el 3 de noviembre de 1949 de *boss boy* en una cafetería en el aeropuerto de Isla Grande con un sueldo de $12.00 semanales (T.E., Vol. I, pág. 4). Sus responsabilidades eran limpiar la cafetería, lavar platos, el piso y el lavamanos (Id. pág. 9). Un año después, en noviembre de 1950, fue colocado como cajero en la empresa con un sueldo de $17.00 semanales. (Id. pág. 5). Trabajó como cajero hasta que pasó a ocupar el puesto de "recaudador" que había dejado vacante el Sr. Erasto Ortiz en el 1952. Ya para esa fecha devengaba un sueldo de $23.00 semanales (Id. pág. 5). En Julio 1, 1953 el sueldo le fue aumentado a $30.00; en Enero 1, 1955, a $40.00 semanales, que fue el sueldo máximo que devengó hasta mayo 13, 1960, fecha en que cesó en su empleo con la querellada.

En el negocio restaurant de la querellada para el cual trabajaba el querellante, varias personas, por lo menos de diez a doce (Id. pág. 22), desempeñaban el cargo de cajero. Este número llegó a fluctuar entre 15 y 18 cajeros, los cuales trabajaban las ocho o diez cajas en diferentes turnos (Id. pág. 21).

---

[2] Dos meses después de radicada la querella entró en vigor la "Ley de Reclamaciones por Servicios Prestados de 1961", Ley Núm. 2 de 17 de octubre de 1961, 32 L.P.R.A. secs. 3118–3132. Este Tribunal ya ha señalado que aun cuando la Ley Núm. 2 de 17 de octubre de 1961 derogó la Ley Núm. 10 de 14 de noviembre de 1917, la primera es fundamentalmente igual a la ley derogada. *Dorado Beach Corp.* v. *Tribunal Superior*, 92 D.P.R. 610 (1965).

La controversia planteada se reduce, pues, a considerar si el querellante Luis López Santos era o no un ejecutivo de la recurrida Bird's Restaurant, Inc., bajo la intención de la Ley Núm. 379 de 15 de mayo de 1948. De serlo no puede reclamar por las horas extras, si algunas, trabajadas para la recurrida. De serlo sólo durante parte del tiempo que trabajó para la empresa recurrida y no serlo por otro período, su reclamación tendrá que limitarse al período que no sea considerado "ejecutivo".

La Ley Núm. 379 de 1948 no define el término "ejecutivo". No fue hasta el 15 de enero de 1952 que comenzó a regir un Reglamento, [3] adoptado por el Secretario del Trabajo definiendo los términos "ejecutivo", "administrador" y "profesional", excluidos del término empleado por el Art. 19 de la Ley Núm. 379 (29 L.P.R.A. sec. 288), *Piñán* v. *Mayagüez Sugar Co., Inc.*, 84 D.P.R. 89 (1954). En dicho Reglamento el término "ejecutivo" se define de la siguiente forma:

"(a) Cualquier empleado (1) cuyo deber primordial consista en la dirección de la empresa en que trabaja o en la dirección de un habitualmente reconocido departamento o subdivisión de la empresa; y

(2) que habitual y regularmente dirija el trabajo de otros dos o más empleados de la empresa o del tal departamento o subdivisión de la empresa; y

(3) que tenga la autoridad de emplear y despedir otros empleados o cuyas sugestiones y recomendaciones sobre el empleo y despido de otros empleados y en cuanto al mejoramiento y ascenso o en relación con cualquier otro cambio de status de otros empleados hayan de recibir especial atención; y

---

[3] Este Reglamento fue aprobado al amparo de los poderes que se le conceden al Secretario del Trabajo en el Art. 17 de la Ley Núm. 379 de 15 de mayo de 1948 y en la Sec. 4 de la Ley Núm. 15 de 14 de abril de 1931. Véase 29 R.&R.P.R. sec. 286–1. Comenzando el 15 de enero de 1960 comenzó a regir un nuevo reglamento, el cual altera algunas disposiciones del anterior.

La Junta de Salario Mínimo de Puerto Rico adoptó un reglamento similar, el Reglamento Núm. 13 de 8 de agosto de 1951. (Posteriormente fue revisado en 1960.) Véase 29 R.&R.P.R. secs. 246C–6 a 246C–13.

(4) que habitual y regularmente ejerza facultades discrecionales; y

(5) que no dedique más del 20% de las horas trabajadas en la semana de labor a actividades que no estén directa e íntimamente relacionadas con el desempeño del trabajo descrito en el párrafo (a), inciso (1) al (4) de este artículo; Disponiéndose que este inciso (5) no será aplicable en el caso de un empleado que esté él solo a cargo de un establecimiento independiente o de una rama del establecimiento físicamente separado del mismo, o que sea dueño de por lo menos 20% del interés de la empresa en que esté empleado; y

(6) que reciba por sus servicios una compensación fija (por día, semana, quincena, o períodos mayores) equivalente a un salario semanal no menor de $30.00, excluyendo alimentos, vivienda u otros servicios; o([4])

(b) Cualquier empleado (1) cuyo trabajo cumpla con los requisitos dispuestos en el párrafo (a), inciso (1) y (2) de este artículo; y

(2) que reciba por sus servicios una compensación fija (por día, semana, quincena o períodos mayores) equivalente a un salario semanal no menor de $100, excluyendo alimentos, vivienda u otros servicios."

■ A partir del 15 de enero de 1952 las disposiciones del Reglamento del Secretario del Trabajo deben usarse para determinar si una persona debe o no ser clasificada como "ejecutivo" para efectos de reclamaciones de salarios. Para determinar la situación de un caso antes del 15 de enero de 1952 deben considerarse todos aquellos factores relevantes—

---

([4])Esta parte del Reglamento fue alterada en la revisión de 1960. Ahora lee de la siguiente manera:

"(vi) que reciba por sus servicios una compensación fija (por día, semana, quincena o períodos mayores) equivalente al sueldo semanal que resulte multiplicando por 60 el tipo mínimo por hora más alto que le sea aplicable, por ley del Estado Libre Asociado de Puerto Rico o por decreto mandatorio de la Junta de Salario Mínimo de Puerto Rico a las actividades en conexión con las cuales ejerce sus funciones de ejecutivo, excluyendo alimentos, vivienda y otros servicios. Disponiéndose, sin embargo, que el salario semanal nunca deberá ser menor de $35 cuando dicha compensación computada en la forma ya expresada resultare o sea menor de esta suma, o cuando no hubiere salario aplicable por ley o por decreto; o . . . ."

naturaleza y funciones del empleo—para evaluar si la posición de una persona en una empresa era la de un ejecutivo o no. *Morales* v. *Tribunal Superior*, 84 D.P.R. 123, 127 (1961).

La Constitución del Estado Libre Asociado de Puerto Rico en su Art. II (Carta de Derechos), Sec. 16 dispone que:

"Se reconoce el derecho de todo trabajador a escoger libremente su ocupación y a renunciar a ella, a recibir igual paga por igual trabajo, a un salario mínimo razonable, a protección contra riesgos del trabajo, y *a una jornada diaria que no exceda de ocho horas. Sólo podrá trabajarse en exceso de este límite diario, mediante compensación extraordinaria* que nunca será menor de una vez y media el tipo de salario ordinario, según se disponga por ley." (Énfasis suplido.)

En dicha sección y en otras de nuestra Constitución, al igual que en la legislación del trabajo aprobada en Puerto Rico, ha sido política pública proteger en la medida posible los trabajadores, creando así un clima de armonía obrero-patronal indispensable para el progreso y bienestar de todos los sectores de la comunidad. En *Municipio de Guaynabo* v. *Tribunal Superior*, 97 D.P.R. 545, 551–552 (1969), sostuvimos que la ". . . exclusión de los trabajadores municipales del pago de tiempo doble por jornada extraordinaria establecido en la Ley Núm. 379 de 15 de mayo de 1948, no tiene el alcance de excluirlos indefectiblemente del beneficio del pago de tiempo y medio mínimo que la Sec. 16 del Art. II de la Constitución dispone para la clase trabajadora." Es por esta razón que la exclusión de un empleado de los beneficios de la legislación laboral debe ser clara y debe interpretarse restrictivamente. Esto implica que los requisitos de exclusión del Reglamento del Secretario del Trabajo, los cuales se encuentran unidos por la conjunción "y", deben acreditarse todos, no uno o algunos. Esto ya ha sido resuelto por este Tribunal en varios casos. Así en *Piñán* v. *Maya-*

*güez Sugar Co., Inc.*, supra, pág. 97, sostuvimos que: "Debe recordarse que en cuanto a la definición de 'ejecutivo' del Reglamento aludido *es preciso que concurran todos los factores allí enumerados.*" (Énfasis suplido.) Véanse *Morales v. Tribunal Superior*, supra, pág. 126; *Medina Vega v. Unión Obreros Cervecería*, 86 D.P.R. 642, 649 (1962); *Matos Velázquez v. Proctor Manufacturing Corp.*, 91 D.P.R. 45, 55 (1964); *Calderón v. Esso Standard Oil Co.*, 92 D.P.R. 129 (1965).

Debido a que la situación del peticionario no fue la misma dentro de la empresa de la querellada desde que comenzó a trabajar en 1949 hasta que cesó en sus labores en 1960, resulta indispensable ver por etapas si el primero era ejecutivo o no en diferentes períodos. Para propósitos de análisis dividiremos el tiempo trabajado por el peticionario en cuatro períodos:

(1) Desde noviembre de 1949 hasta noviembre de 1950.

(2) De noviembre de 1950 hasta la fecha en que el peticionario pasó a ocupar el puesto de "Cajero Recaudador" dejado vacante por el Sr. Erasto Ortiz.[5]

(3) Desde esta última fecha en 1952 hasta el día antes de habérsele aumentado el sueldo a $30.00 semanales el 30 de junio de 1953.

(4) Desde el 1º de julio de 1953, fecha en que comenzó a recibir $30.00 semanales, hasta el día que cesó en sus labores, el 13 de mayo de 1960.

■ El Tribunal Superior concluyó que durante el año comprendido en el primer período (noviembre, 1949—noviembre, 1950) el querellante no podía ser clasificado como ejecutivo. Coincidimos, ya que durante ese año el querellante se dedicó a hacer labores manuales de limpieza principalmente y su sueldo era de $12.00 semanales.

---

[5] Por indicaciones en la prueba parece ser en noviembre de 1952. No obstante, ello debe aclararse.

El 15 de enero de 1952 comenzó a regir el Reglamento del Secretario del Trabajo en el cual se define el término "ejecutivo". Como señalamos anteriormente, todos los requisitos que son mencionados en dicha definición deben concurrir para que el querellante quede excluido del beneficio de retribución adicional por las horas trabajadas en exceso de la jornada legal. Para el período cubierto por la querella anterior al 15 de enero de 1952, en ausencia de reglamentación, este Tribunal ha entendido que deben considerarse todos los hechos relevantes sobre la naturaleza, características y funciones del empleo. *Morales* v. *Tribunal Superior*, supra. Resulta justo que se usen criterios similares a los del Reglamento para así evitar que dos casos sean resueltos de diferente manera.

El Tribunal Superior consideró que el querellante era un "ejecutivo" desde el 1950 en adelante. Diferimos. La evidencia revela que durante el tercer período señalado, que se inicia al ocupar el puesto de "recaudador" dejado vacante por el Sr. Erasto Ortiz, hasta el 30 de junio de 1953, fecha en que se le aumentó a $30.00, el querellante recibía un sueldo de sólo $23.00 semanales. El Reglamento exigía como uno de los factores para considerar a una persona "ejecutivo" el:

"(6) que reciba por sus servicios una compensación fija . . . equivalente a un salario semanal no menor de $30 . . ."

Considerando que el humilde salario del querellante durante el tercer período era inferior al mínimo requerido por el Reglamento, no creemos que pueda sostenerse que era un empleado ejecutivo durante este período. Por otro lado resultaría un tanto extraño que lo consideráramos "ejecutivo" durante el segundo período y no durante el tercero. Durante el segundo período que comprende desde noviembre de 1950 hasta la fecha en que pasó a ocupar el puesto de "Cajero Recaudador", el querellante ocupó el puesto de cajero comenzando con un sueldo de $17.00 semanales. Tampoco po-

demos considerarlo un "empleado-ejecutivo" durante este período, pues ello conllevaría la interpretación del término "ejecutivo" de una manera más amplia que la contemplada en el Reglamento. En *Sierra* v. *Mario Mercado e Hijos*, 81 D.P.R. 314, 322–323 (1959), sostuvimos que:

"Ciertamente no parece arbitrario ni tampoco irrazonable exigir, como condición *sine qua non* para que un empleado sea un 'ejecutivo', que éste reciba una compensación fija equivalente a un salario semanal no menor de $30.00, excluyendo alimentos, vivienda u otros servicios."

El 30 de junio de 1953 se le aumentó el sueldo al querellante a $30.00 semanales. Ya para esa fecha trabajaba de "Cajero Recaudador". El primer requisito para determinar si un empleado es un ejecutivo de acuerdo con el Reglamento es que sea un empleado.

"(1) cuyo deber primordial consista en la dirección de la empresa en que trabaja o en la dirección de un habitualmente reconocido departamento o subdivisión de la empresa; . . . ."

Al pasar a ocupar el puesto de "Cajero Recaudador" en el año 1952, las tareas principales del querellante eran, entre otras, las de proveer menudo a los cajeros, cuadrar diariamente las cajas en los distintos turnos, hacer los depósitos en el banco y asignarles los turnos a los cajeros. En Julio 1, 1953 se le aumentó el sueldo a $30.00 y en Enero 1, 1955, a $40.00 semanales. Éste fue el sueldo máximo que devengó hasta que cesó en su empleo con la querellada. La prueba presentada por la querellada revela que el querellante, además, recomendaba aumentos de sueldo para los cajeros, entrevistaba empleados para cubrir vacantes y velaba por la disciplina. La evidencia documental presentada por la querellada revela que recomendaciones del querellante sobre aumento de sueldo y cubrir vacantes recibieron la atención de la gerencia en ocho ocasiones durante la década que el querellante trabajó para la querellada: tres ocasiones en el año 1956; tres en el 1957 y dos en el 1958. La querellada lo

llamaba "Cajero-Recaudador" y el querellante se llamaba a sí mismo "Supervisor de Cajeros". No tenemos duda que una de las tareas principales del querellante desde que sustituyó al Sr. Erasto Ortiz era la de supervisar por lo menos ocho a diez cajeros. Ciertamente era una de las tareas más importantes que él desempeñaba durante ese último período. Pero con excepción de llamar la atención a algún cajero sobre algún asunto de disciplina o de simple rutina del trabajo, ninguna de estas funciones envolvía el uso de discreción. El marco de sus atribuciones estaba estrechamente delineado. No tenía autoridad alguna para emplear o despedir personal. Si bien ostentaba cierta autoridad sobre los demás cajeros, ella, de por sí solo, no lo coloca dentro de la definición de "ejecutivo" que contempla el Reglamento. Uno de los requisitos para ser considerado ejecutivo es que no dedique más de un 20% de su tiempo a actividades que no estén relacionadas con las que deben existir en todo caso donde se determine que un empleado debe ser clasificado como "ejecutivo". Una parte considerable del tiempo del peticionario lo dedicaba a cuadrar las cajas, hacer depósitos en los bancos y relevar a los cajeros en sus horas de almuerzo. De los seis requisitos que tienen que concurrir, por lo menos tres—el primero, el cuarto y el quinto—no existen en este caso, y el requisito de compensación semanal de $30.00 ó más sólo existe a partir de Julio 1, 1953. La querellada arguye que estas labores deben ser consideradas como parte de las funciones de supervisor del querellante ya que le permitían aquilatar la labor de los cajeros. Estamos de acuerdo que la labor de cuadrar las cajas podría tener el efecto incidental de colocar al querellante en posición de formular una mejor evaluación de la labor rendida por los cajeros. Sin embargo ésa era sólo una de sus gestiones. El querellante hacía también los depósitos en los bancos y relevaba a los cajeros en las horas de almuerzo, actividades éstas que no están relacionadas con la lista de exigencias que

deben existir en todo caso donde se determine que un empleado debe ser clasificado como "ejecutivo". Ni las unas ni las otras funciones exigían del querellante mayor preparación o habilidad. Consideradas en conjunto no puede decirse que dichas funciones justifiquen la conclusión de que el querellante era un "ejecutivo" de la empresa querellada. Ninguna de ellas exigía el uso de su discreción, factor éste que debe concurrir con los demás factores para excluirlo de la protección que le ofrece la ley. El propósito de la exclusión de "ejecutivos" no es el de incluir a todo el que tenga alguna autoridad en la empresa no importa lo pequeña que ésta sea.

*Se anulará la resolución recurrida declarando con lugar la defensa afirmativa de la querellada al efecto de que el querellante era un "ejecutivo" de ésta y se devolverán los autos al tribunal de instancia para ulteriores procedimientos.*

El Juez Presidente, Señor Negrón Fernández, no intervino.