DORADO BEACH CORPORATION, peticionaria, *v.* TRIBUNAL SUPERIOR DE PUERTO RICO, SALA DE BAYAMÓN, HON. AUGUSTO PALMER, JUEZ, demandado.

*Número:* C-64-81      *Resuelto:* 30 de junio de 1965

*Fiddler, González & Rodríguez* y *Juan R. Torruella del Valle,* abogados de la peticionaria; *J. B. Fernández Badillo, Procurador General,* y *J. F. Rodríguez Rivera, Procurador General Auxiliar,* abogados del Estado Libre Asociado de Puerto Rico, interventor.

El Juez Asociado Señor Dávila emitió la opinión del Tribunal.

Un grupo de personas demandó a la Dorado Beach Hotel Corporation acogiéndose al procedimiento establecido en la Ley Núm. 2 de 17 de octubre de 1961, 32 L.P.R.A. sec. 3118 (Supl. 1964), en cobro de salarios, vacaciones y horas extras. Alegan que "la parte querellada contrató y utilizó los servicios de los obreros querellantes para trabajar como 'caddies' de los 'turistas' o huéspedes, permanentes o transeúntes, de su hospedería, quienes utilizaron el campo de golfo para jugar tal deporte".

La querellada atacó la validez de la ley que estableció el procedimiento al cual se acogieron los querellantes para instar

su reclamación. Sostiene que es inconstitucional, porque estableciendo dicha medida un procedimiento para la reclamación de salarios, es de origen legislativo, contraviniendo el precepto constitucional que provee que el Tribunal Supremo es el cuerpo autorizado a adoptar inicialmente la reglamentación de los procedimientos judiciales.

La disposición constitucional invocada es la Sec. 6 del Art. V que lee así:

"El Tribunal Supremo adoptará, para los tribunales, reglas de evidencia y de procedimiento civil y criminal que no menoscaben, amplíen o modifiquen derechos sustantivos de las partes. Las reglas así adoptadas se remitirán a la Asamblea Legislativa al comienzo de su próxima sesión ordinaria y regirán sesenta días después de la terminación de dicha sesión, salvo desaprobación por la Asamblea Legislativa, la cual tendrá facultad, tanto en dicha sesión como posteriormente, para enmendar, derogar o complementar cualquiera de dichas reglas, mediante ley específica a tal efecto."

El tribunal de instancia desestimó el planteamiento constitucional y la querellada entonces, conforme a la Regla 30 de las de Procedimiento Civil de 1958, notificó a los querellantes unos interrogatorios. [1]

---

[1] La información solicitada es la siguiente:

"1. Diga su nombre exacto y dirección.

"2. Diga su número de Seguro Social.

"3. Diga todos los hechos conocidos por usted con relación a las alegaciones que usted hace en la querella.

"4. Diga el nombre del patrono que lo empleó durante el período a que se contrae la demanda.

"5. Haga un detalle minucioso de la naturaleza exacta de su alegado empleo con la demandada indicando su jefe o jefes inmediatos.

"6. Diga el nombre de la persona que alegadamente lo empleó para trabajar con la demandada.

"7. Diga la persona o personas que le pagaban a usted por sus servicios durante su alegado empleo con la demandada indicando la forma de pago e indicando también todos los descuentos, si alguno, que hiciese la demandada, si ésta fuese su alegada patrona.

"8. Diga si en su alegado empleo con la querellada usted estaba obligado a reportarse al trabajo a alguna hora específica y también si era requerido que trabajase hasta alguna hora específica. Si su contestación

Solicitó se le concediera un término de veinte días para responder a la querella a partir de la contestación de los interrogatorios. La prórroga solicitada fue concedida. Radicaron entonces los reclamantes un escrito solicitando del tribunal dejara sin efecto la prórroga concedida y que ordenara contestar la querella "sin necesidad del descubrimiento de prueba solicitado ya que el mismo es contrario a la Sección 3 de la Ley número 2 de 17 de octubre de 1961".

El tribunal resolvió que los querellantes no estaban obligados a contestar los interrogatorios. Al resolver la cuestión expresó:

"Este estatuto [Sec. 3 de la Ley Núm. 2 de 17 de octubre de 1961] impide el descubrimiento de prueba en estos casos de reclamación de salarios tramitados a través de la ley procesal particular disponible para este tipo de litigio; el descubrimiento de prueba prohibido es aquel relativo a datos que deben figurar en las constancias, nóminas, listas de jornales y demás récords que los patronos vienen obligados a conservar en virtud de las disposiciones de la Ley de Salario Mínimo y de todo lo correspondiente promulgado el amparo de la misma."

---

es en la afirmativa, diga la persona empleada por la querellada a quien venía obligado a informar su hora de entrada y salida.

"9. Con relación a las alegaciones que hace en la querella, diga si tiene récord de clase alguna que indique las horas que alega trabajó para la querellada. Si su contestación es en la afirmativa, adjunte copia de la misma.

"10. Con relación a su alegado empleo con la querellada, especifique los términos de su alegado contrato de empleo con ésta indicando el término de tiempo por el cual usted fuese alegadamente empleado y las condiciones relativas a paga y vacaciones.

"11. Diga si usted se emplea para algún otro patrono que no fuese la querellada indicando el nombre y dirección del mismo. Dicha información debe cubrir el período total de la querella.

"12. Diga si usted es estudiante o lo ha sido durante el período que cubre la querella. En caso afirmativo indique el nombre y dirección de la escuela en la cual estudiaba. Indique también el grado o grados que cursaba.

"13. Detalle el control, si alguno, ejercitado por la querellada sobre la forma de llevar a cabo sus funciones como alegado empleado de ésta."

Al relevar a los querellantes de contestar los interrogatorios le concedió a la querellada un término de 20 días para contestar la querella.

Se contestó la querella dentro del término concedido pero la demandada nos pidió revisáramos la resolución que eximió a los querellantes de contestar los interrogatorios así como la que negó el pedido de que se declarara inconstitucional la Ley Núm. 2 de 17 de octubre de 1961.

Arguye la querellada que la Sec. 6 del Artículo Judicial de nuestra Constitución sólo permite a la Asamblea Legislativa enmendar, derogar o complementar las reglas adoptadas inicialmente por el Tribunal Supremo. Concediendo que esa es la única facultad que tiene la Asamblea Legislativa procede que examinemos lo ocurrido en relación con la ley atacada.

La Asamblea Legislativa hace casi cincuenta años aprobó una ley adoptando un procedimiento sumario para reglamentar las reclamaciones de salarios. Estableció un procedimiento rápido y sencillo para aligerar el trámite de estas reclamaciones. Cuando este Tribunal por primera vez en el año 1943 adoptó reglas de enjuiciamiento, quedó vigente el procedimiento estatuido por la Asamblea Legislativa mediante la Ley Núm. 10 del año 1917. Así mismo cuando en el año 1958 adoptamos nuevas reglas de procedimiento específicamente se dispuso por la Regla 61 que "todos los procedimientos legales especiales y cualesquiera otros procedimientos de naturaleza especial no incluidos en las Reglas 55, 56, 57, 58, 59 y 60 [2] se tramitarán en la forma prescrita en el estatuto correspondiente". Subsistió, pues, como regla de procedimiento adoptada por este Tribunal el procedimiento establecido por la Ley del año 1917.

■ Así, en cuanto a esta ley se refiere, por haber sido adoptada por este Tribunal, como reglamentación especial

---

[2] La Regla 55 trata sobre los remedios extraordinarios; la 56 sobre remedios provisionales; la 57 sobre *injunctions*; la 58 sobre expropiación forzosa; la 59 sobre sentencia declaratoria y la 60 sobre un procedimiento especial para reclamaciones que no excedan de $100.00.

para la reclamación de salarios, la Asamblea Legislativa podía enmendarla, derogarla o complementarla.

■ Si bien la Ley del 1961 derogó la ley vigente de 1917, lo cierto es que si se examinan ambos estatutos se verá que la nueva ley es fundamentalmente igual a la derogada. De hecho es una reenactación, con algunas enmiendas, de la anterior. Mantiene los principios básicos de la anterior y la principal enmienda consiste en adicionarle lo relativo a la forma en que se aplicarán las Reglas de Procedimiento relacionadas con el descubrimiento de prueba. (³) De hecho la

---

(³) A continuación las diferencias entre la Ley de 1917 y la de 1961:

| Ley de 1917 | Ley de 1961 |
|---|---|
| Sec. 1. | |
| 1. Jurisdicción: | |
| Tribunal de Distrito, con jurisdicción concurrente del Trib. Superior cuando la cuantía excede de 500 dólares. | Tribunal de Distrito o Superior, dependiendo de la cuantía. |
| 2. Partes: | |
| Obrero o empleado únicamente. | Intervención del Sec. del Trabajo, podrá demandar a iniciativa propia o a instancias y en representación del obrero o empleado. También podrá constituirse en querellante o interventor en toda reclamación bajo la ley. |
| Sec. 2. Definiciones: (No hay diferencia.) | |
| Sec. 3. Procedimiento: | |
| 1. El juez ordenará que se notifique a la parte querellada quien deberá contestar dentro de 10 días después de la notificación, si se hiciere en el mismo distrito judicial, o 15 días en los demás casos. Solamente mediante moción, en la cual se expongan bajo juramento los motivos que para ello tuviere la parte querellada, podrá el juez prorrogar el término para contestar, de lo contrario se dictará sentencia en su contra. | Igual que la ley anterior más: Querellado deberá hacer una sola alegación responsiva en la cual deberá incluir todas sus defensas y objeciones entendiéndose renunciadas las no incluidas. En relación con los medios de descubrimiento anteriores al juicio autorizados por las Reglas de Proc. Civil, la parte querellada no podrá usarlos para obtener información que debe figurar en los |

Asamblea Legislativa no aprobó unas nuevas reglas de procedimiento para las reclamaciones de salarios. Enmendó la ley vigente que había sido adoptada por este Tribunal como regla de procedimiento para esta clase de reclamaciones. Y cierta-

récords que los patronos vienen obligados a conservar en virtud de las disposiciones de la Ley de Salario Mínimo excepto cualquier declaración prestada o documento sometido por la parte querellante en cualquier acción judicial.

Ninguna de las partes podrá someter más de un interrogatorio o deposición excepto que medien circunstancias excepcionales que a juicio del Tribunal justifiquen la concesión de otro interrogatorio u otra deposición.

La información obtenida por el Sec. de Trabajo en el curso de las investigaciones practicadas en el ejercicio de las facultades concedidas en la Ley de Salario Mínimo será de carácter privilegiado y confidencial y sólo podrá ser divulgada mediante la autorización del Sec. de Trabajo.

Sec. 4. Vista. Sentencia en Rebeldía: (No hay diferencias.)

Sec. 5. Notificación a, e intervención del Sec. de Trabajo: (No hay diferencias.)

Sec. 6. No comparencia de las partes:

1. Si ninguna de las partes compareciere el tribunal desestimará la reclamación.

Si ninguna de las partes compareciere el Trib. pospondrá la vista del caso.

(Igual cuando sólo compareciere el querellado (desestimación) o cuando sólo comparece el querellante (sentencia).)

Sec. 7. Discreción del Tribunal:

1. (Sec. 3 discreción según R. 60(b) de las Reglas de 1943 (término de 6 meses).

Discreción según R. 49.2 de las Reglas de 1958 (término de 60 días, deberá consignar los medios en que se funda y deberá hacerse mediante juramento.)

mente no hay duda que la Asamblea Legislativa podía enmendarla. Específicamente la Constitución lo autoriza. Véase, Ramos Buonomo, *La Naturaleza del Poder del Tribunal Supremo de Puerto Rico para Adoptar Reglas de Procedimiento Civil y Criminal y Reglas de Evidencia*, 33 Rev. Jur. U.P.R. 391, 406 (1964).

Consideremos ahora la cuestión de los interrogatorios sometidos por la corporación querellada. El juez de instancia resolvió que los querellantes no estaban en la obligación de suministrar la información solicitada ya que la ley dispone que "en la relación con los medios de descubrimiento anteriores al juicio autorizados por las Reglas de Procedimiento Civil . . . la parte querellada no podrá usarlos para obtener

Sec. 8. Defectos de Forma: (No hay diferencias.)

Sec. 9. Sentencia: (No hay diferencias.)

Sec. 10. Apelaciones del Tribunal de Distrito:

| | |
|---|---|
| Dentro de los 5 días siguientes a la fecha en que fuere presentado el escrito, de apelación, el secretario remitirá al Trib. Superior las actas originales del caso. Trib. Superior señalará el caso, fuera del calendario, un día dentro de los primeros diez en que se haya elevado los autos. Notificación a las partes y al Sec. de Trabajo. | Procedimiento ordinario para las apelaciones del Trib. de Distrito al Trib. Superior. |

Sec. 11. Indemnización por apelación dilatoria: (No hay diferencias.)

Sec. 12. Apelaciones del Tribunal Superior Conforme al procedimiento ordinario: (Inexistente.)

Sec. 13. Limitación en las apelaciones; *Certiorari*:

| | |
|---|---|
| 1. Una sola apelación en juicios sobre reclamación de salarios agrícolas. | Una sola apelación. (No hace referencia a salarios agrícolas.) |

Sec. 14. Pago de sentencia; ejecución:

| | |
|---|---|
| 1. Sentencia ordenará el pago para dentro de los cinco días siguientes a la fecha en que dicha sentencia sea firme. | No dispone término para el pago de la sentencia. |

Sec. 15. Costas y Honorarios de Abogado: (No hay diferencias.)

información que debe figurar en las constancias, nóminas, listas de jornales y demás récords que los patronos vienen obligados a conservar en virtud de las disposiciones de la Ley de Salario Mínimo y los reglamentos promulgados al amparo de la misma . . .".

Pero no podemos aplicar la ley desvinculada por completo de las alegaciones. En la contestación radicada se expone que la querellada "específicamente alega que los querellantes no son ni han sido en ningún momento empleados de la querellada". Ésta es la defensa principal de hecho levantada por la demandada. Tenemos que presumir que dicha alegación se ha hecho de buena fe. Cuando existe una controversia *bona fide* sobre si los demandantes han sido o no empleados de la demandada, y ésta, por creer que no lo han sido, no lleva constancias, nóminas, listas de jornales y demás récords que los patronos vienen obligados a conservar en virtud de la Ley de Salario Mínimo, no puede aplicarse la disposición de la Ley de 1961 que prohibe a los patronos solicitar aquella información, mediante interrogatorio, que ellos deben llevar y tener en su poder.

Podría argüirse que a cualquier demandado a fin de poder utilizar los interrogatorios como medio de descubrimiento de prueba, le bastaría alegar que los demandantes no han sido sus empleados. Sin embargo, nada impide a los demandantes solicitar la admisión de ese hecho, y si la demandada lo niega y luego se le prueba ser cierto, queda sujeto a las sanciones correspondientes. Por otro lado la prohibición de utilizar los medios de descubrimiento de prueba va dirigido al patrono que por ser los querellantes sus empleados, viene obligado a llevar y conservar los récords que disponen la Ley de Salario Mínimo y los reglamentos; pero si en verdad la parte querellada no lleva esos récords porque como antes dijimos, de buena fe entiende que no son sus empleados, la aplicación a aquélla, de la prohibición de utilizar los medios de descubrimiento de

prueba resultaría discriminatoria y de dudosa validez. Además es una forma de ayudar a clarificar y hacer más sencilla la controversia judicial. Si previo al juicio la demandada no tuviera conocimiento de los detalles solicitados, sólo podía obtenerlo durante el contrainterrogatorio y evidentemente entonces no estaría en la mejor posición para impugnar la prueba de los querellantes, y se prolongaría la vista innecesariamente. Así, mediando las circunstancias presentes en el caso de autos en el que se alega que los reclamantes no son empleados, es procedente que se le suministre la información solicitada.

*Se anulará la resolución recurrida y se devolverá el caso para ulteriores procedimientos consistentes con lo expuesto anteriormente.*

El Juez Asociado Señor Belaval concurre con los resultados. El Juez Asociado Señor Santana Becerra concurre en parte y disiente en parte. Los Jueces Asociados Señores Hernández Matos y Blanco Lugo no intervinieron.

—O—

Opinión concurrente en parte y en parte disidente del Juez Asociado Señor Santana Becerra

San Juan, Puerto Rico, a 30 de junio de 1965

Concurro en que la Ley Núm. 2 de 17 de octubre de 1961 no es inconstitucional, según se atacó, por falta de autoridad del Poder Legislativo para aprobarla. [1] Aunque no estoy en desacuerdo con el fundamento que ha dado el Tribunal para sostener la Ley en las circunstancias de este caso, para mi considero que hay razones de mayor alcance que llegan hasta el fondo mismo del problema constitucional planteado.

---

[1] "Para establecer un procedimiento sumario para los casos de reclamaciones de obreros y empleados contra sus patronos por servicios prestados;" etc.

El precedente inmediato que hubo en Puerto Rico para autorizarse al Tribunal Supremo a promulgar y poner en vigor reglas en procedimientos judiciales fue la Ley del Congreso Núm. 415 de 19 de junio de 1934—48 Stat. 1064— que autorizó a la Corte Suprema de los Estados Unidos para prescribir, mediante reglas generales, la práctica y el procedimiento en las cortes de distrito y en las cortes del Distrito de Columbia en acciones civiles en ley, y para unificar las reglas generales prescritas para los casos en equidad con aquéllas para las acciones en ley de modo de crear una sola forma de acción civil y procedimiento para ambas. Las reglas no debían abrogar, expandir o modificar los derechos sustantivos de los litigantes. Se dispuso que las reglas no entrarían en vigor hasta que hubieren sido enviadas al Congreso por el Procurador General al comienzo de una sesión regular y hasta la terminación de dicha sesión, y entonces, toda ley en conflicto con las mismas quedaría sin efecto. Como es harto conocido, en virtud de la autoridad mencionada el Tribunal Supremo de los Estados Unidos adoptó reglas de procedimiento civil para las cortes de Distrito de los Estados Unidos que entraron en vigor el 16 de septiembre de 1938.

Dijimos precedente inmediato porque en verdad no existía aquí ni la tradición histórica inglesa—nuestra tradición histórica procesal fue siempre legislativa en toda la extensión y nos rigió la excelente Ley española de Enjuiciamiento Civil con entronque en Fueros, Partidas, Ordenamientos y Leyes casi desde el principio del milenio y luego del cambio de soberanía legislación procesal codificada—ni tampoco existían aquí históricamente las razones e imperativos que movieron la acción del Congreso ante los complejos problemas procesales en las Cortes de los Estados Unidos con sus procedimientos distintos para las acciones en ley y para las en equidad, y el todavía más difícil problema debido a la naturaleza federativa de la judicatura de Estados Unidos que siendo la misma corte, debía utilizar tantas formas diversas procesales como pro-

cedimientos estatales o locales hubieran, problemas éstos que no nos agobiaban porque no los teníamos. (²)

Con las leyes del Congreso Núms. 415 de 1934 y 675 de 1940 como precedentes inmediatos, en 5 de abril de 1941 se aprobó en Puerto Rico la Ley Núm. 9 que le confirió a la Corte Suprema facultad para regular los procedimientos judiciales en todas las cortes de Puerto Rico mediante reglas a ser promulgadas y puestas en vigor de tiempo en tiempo, sin que dichas reglas pudieran derogar, ampliar, o modificar los derechos sustantivos de los litigantes. Aprobadas las mismas, se remitiría copia a la Asamblea Legislativa en su próxima sesión ordinaria y no comenzarían a regir hasta la clausura de dicha sesión. Toda ley de práctica o procedimiento judicial vigente al aprobarse la Ley Núm. 9 quedaría en vigor

---

(²) Demasiado, en verdad, se ha dicho y se ha escrito sobre el particular sin faltar, desde luego, exageraciones aun de reputados panegiristas del sistema al extremo de pretender negarle habilidad y conocimiento a las legislaturas para disponer sobre la materia procesal en corte y reconocerle toda idoneidad y aptitud para ello a los jueces. Para una referencia rápida sobre el cambio y sus circunstancias, la relativamente breve pero muy específica y clara exposición del Profesor Moore. *Federal Practice,* ed. 2a. (1961) Vol. 1A, págs. 5017 y ss.

Por la Ley del Congreso 675 de 29 de junio de 1940—54 Stat. 688— se concedió similar facultad y en parecida forma al Tribunal Supremo de los Estados Unidos para prescribir reglas de práctica y procedimiento cubriendo todos los trámites anteriores a un veredicto, éste inclusive; o determinación de culpabilidad o inocencia por la Corte de no haber jurado; o declaración de culpabilidad, en casos criminales en las cortes de distrito de los Estados Unidos, incluyendo las Cortes de Distrito de Alaska, Hawaii, Puerto Rico, Zona del Canal e Islas Vírgenes; en las Cortes Supremas de Hawaii y de Puerto Rico y en la Corte de Estados Unidos en China y en procedimientos ante comisionados de Estados Unidos. Toda ley en conflicto con las mismas quedaría sin efecto. Las Reglas de Procedimiento Criminal se adoptaron y rigieron el 21 de marzo de 1946. Si bien la Ley 675 incluyó en estas reglas a la Corte Suprema de Puerto Rico, el comité asesor no lo intentó por razones obvias. *Cyc. of Federal Procedure,* Vol. 11, pág. 34; Regla 54(a) 18 U.S.C.A., pág. 501; Moore, *Fed. Practice,* Vol. 2, 2da. ed., pág. 21, párr. 103[6]. No obstante, y a pesar de las enmiendas posteriores para conformar el estatuto a la nueva situación de Hawaii y Alaska como Estados, aun subsiste la referencia a la Corte Suprema de Puerto Rico en el referido estatuto de 1940, según versión actual—18 U.S.C.A., sec. 3771, Supl. de 1964, pág. 152.

como regla de la Corte Suprema a menos que por las reglas fuera derogada, enmendada o modificada.

En uso de la facultad concedida este Tribunal adoptó reglas de enjuiciamiento civil que fueron remitidas a la Asamblea Legislativa el 18 de marzo de 1943. Las Cámaras Legislativas no tomaron acción y las reglas, calcadas prácticamente en las adoptadas por el Tribunal Supremo de los Estados Unidos para las cortes federales, comenzaron a regir por su propia cláusula de vigencia el primero de septiembre de 1943.

A principios de la sesión de 1948 este Tribunal Supremo remitió a la Asamblea Legislativa por primera vez un cuerpo de reglas de enjuiciamiento criminal. (³) No hubo acción legislativa en cuanto a las mismas, pero en 15 de abril de 1948 se aprobó la Ley Núm. 25 enmendadora de la Ley Núm. 9 de 1941 y se dispuso ahora que la Corte Suprema quedaba facultada para "redactar y proponer" a la Asamblea Legislativa reglas para los procedimientos judiciales en todas las cortes de Puerto Rico y que una vez redactadas por la Corte Suprema se remitiría copia de las mismas a la Asamblea Legislativa para su "estudio y consideración", y empezarían a regir en la fecha y con las enmiendas con que fueran aprobadas por la Asamblea Legislativa. Dispuso en forma similar que toda ley concerniente a práctica o procedimiento judicial en vigor al ser aprobada la Ley Núm. 25 quedaría en vigor a menos que fuera modificada, enmendada o derogada por "la Asamblea Legislativa".

Las reglas de enjuiciamiento criminal remitidas en 1948 nunca entraron en vigor al clausurarse la sesión porque no fueron aprobadas expresamente por la Asamblea Legislativa. Podrá observarse que la norma legislativa expresada en el 1948 se apartó fundamentalmente tanto de la Ley de 1941 como de la norma federal, en el sentido de requerir aproba-

---

(³) Actas de la Cámara de 1948, págs. 207, 219, 352; Actas del Senado de 1948, págs. 175, 613–615.

ción por la Asamblea Legislativa antes de que las reglas pudieran entrar en vigor.

Hemos hecho el anterior recuento porque constituye la situación normativa con anterioridad a la Convención Constituyente y que se caracterizaba: primero, porque en momento alguno la Asamblea Legislativa de Puerto Rico, al igual que el Congreso que tampoco lo hizo, se desposeyó o renunció a su poder de legislar sobre toda materia, inclusive de procedimiento judicial, no obstante la facultad permisible extendida al Tribunal Supremo para prescribir reglas, que no fue sino un acto de *delegación* voluntaria como así se interpretó la acción del Congreso, *Sibbach* v. *Wilson & Co.*, 312 U.S. 1, pág. 9; y segundo, porque distinto a la norma del Congreso y la inicial de nuestra propia Legislatura en el año 1941, la situación que prevalecía al reunirse la Convención Constituyente era que tales reglas constituían propuestas a la Asamblea Legislativa y no adquirían vigencia a menos que expresamente fueran aprobadas por la Legislatura.

En el Informe de la Comisión de la Rama Judicial de la Convención Constituyente se sometió el siguiente texto de la Sec. 6 del Art. V de la Constitución referente al Poder Judicial [Sec. 8]: "El Tribunal Supremo adoptará reglas de procedimiento civil y criminal y de evidencia para los tribunales de justicia de Puerto Rico. Las Reglas así adoptadas se remitirán a la Asamblea Legislativa al comienzo de su próxima sesión ordinaria y no comenzarán a regir hasta la terminación de dicha sesión. El Poder Legislativo tendrá facultad en todo tiempo, mediante ley específica limitada a tal efecto, para enmendar, suplementar o derogar cualquiera de dichas Reglas."

Al someterse al pleno de la Convención dicho Informe el Delegado Sr. Ramos Antonini, Presidente de la Comisión, se manifestó así al explicar la propuesta:

"Tercera característica, es el poder que se confiere al Tribunal Supremo para adoptar las reglas de procedimiento civil, criminal y de evidencia.

"Actualmente, hay un asomo de ese propósito en la legislación vigente, pero podría muy bien cambiarse en cualquier momento y privar de toda facultad al Tribunal Supremo para aprobar tales reglas. Lo que hacemos es elevar a rango constitucional el procedimiento, que en alguna otra forma ha existido desde los últimos años en nuestra legislación, de manera que sea el propio poder judicial el que adopte las reglas de procedimiento.

"Bien es cierto que se conserve al poder legislativo la facultad de enmendar o derogar o suplementar las reglas adoptadas por el Tribunal Supremo, como asimismo también el Tribunal Supremo viene obligado a someter, al comienzo de cada sesión ordinaria o de la que sea, las reglas que haya adoptado y éstas no regirán hasta cerrarse la sesión. Esto tiende a crear, de momento y de manera saludable, lo que pudiera llamarse el sistema de contra-peso entre el poder legislativo y el judicial con el ejecutivo también, pero ciertamente al dársele la iniciativa y la facultad al Tribunal Supremo en relación con el cuerpo de reglas, en general, estamos convencidos de que se desarrollará, en el curso del tiempo, un climax en el sentido de aprobación de reglas, mediante el cual será muy de tarde en tarde que la Legislatura de Puerto Rico tendrá necesidad de, en alguna forma, por vía de enmienda, derogación o suplementación, realizar la función de aprobación de reglas de procedimiento, que desde tiempo inmemorial ha sido un poder inherente del poder judicial, a través de la historia en todo el mundo." (4)

La propuesta fue objeto de amplio debate en el seno de la Convención, centralizado precisamente, en el aspecto de la intervención legislativa y de su alcance. Ante expresiones del Delegado Sr. Iriarte, el Delegado Presidente de la Comisión Sr. Ramos Antonini volvió a expresar:

"Con la venia de V.H., el propósito del envio de esas reglas a la Legislatura es para poner a la Legislatura en conocimiento, mediante la información que dicho envio constituye, de manera que la Legislatura, conociéndolas, pueda entonces enmendarlas, derogarlas en total o suplementarlas en parte o no hacer nada, y rige en total o parcialmente según sea como la Legislatura las haya derogado, las haya enmendado o las haya suplementado."

(4) *Diario de Sesiones de la Convención*, pág. 172.

A una observación del Delegado Sr. Iriarte, de que esa era una manera nueva de legislar, el Sr. Ramos Antonini expresó que así mismo era el procedimiento en el 1941, refiriéndose sin duda a la Ley Núm. 9 ya mencionada.

Más tarde en el curso del debate, el Delegado Dr. Figueroa sometió la siguiente enmienda:

"Las reglas así adoptadas se remitirán a la Asamblea Legislativa al comienzo de su próxima sesión ordinaria y no comenzarán a regir hasta la terminación de dicha sesión, *salvo desaprobación de la Legislatura,* la que tendrá facultad en todo tiempo, mediante ley específica limitada a tal efecto, para enmendar, suplementar o derogar cualquiera de dichas Reglas."

La enmienda del Dr. Figueroa consistió en intercalar la frase anteriormente subrayada, que reconocía la facultad expresa de la Asamblea Legislativa para *desaprobar* el cuerpo de reglas sometido, aparte de la facultad de enmendar, derogar o complementar "cualquiera" de dichas reglas mediante ley específica. Tanto el Presidente de la Comisión Sr. Ramos como el Delegado Sr. Gutiérrez Franqui quienes defendían la propuesta aceptaron de inmediato la enmienda del Dr. Figueroa.[5]

Cualquiera que sea el mayor o menor significado que pudiera darse al pensamiento del Delegado Sr. Ramos Antonini, después del debate y del paso de la propuesta por el seno de la Convención me parece bastante claro que en esta materia de regular el procedimiento la Constitución no confirió al Tribunal Supremo una facultad distinta, ni de otra naturaleza o más amplia en su esencia que aquélla de la cual disfrutó en forma permisible por delegación legislativa hasta el 1948. A partir de este año y hasta la Constitución, el concepto de la delegación fue aún más restrictivo. Si bien la acción constitucional no exigió la aprobación previa expresa de las reglas, esto fue sólo un retorno a la situación original

---

[5] *Diario de Sesiones de la Convención,* págs. 230 y 231. Y véase el *Diario* a las págs. 239, 240, 627, 630.

de 1941 y por otro lado, se dispuso de manera expresa la facultad de la Asamblea Legislativa para desaprobar las sometidas y para alterar cualquiera de ellas, lo cual no quedó reservado en aquel año. (6)

Se puede concluir, como en parte expuso el Sr. Ramos, que el propósito fue elevar a rango constitucional la anterior delegación estatutaria—pero, a nuestro juicio, sin que se ampliara o se alterara la esencia de la delegación—de modo de darle a la misma, por muchas razones deseable aunque tampoco libre de toda crítica o desventaja, aquella relativamente mayor estabilidad que ofrecen las constituciones y una mayor inmunidad contra cambios con el cambio de legislaturas después de cada proceso electoral. Entiendo que, ni por la situación estatutaria de 1941 a 1952 de delegación revocable al igual que la acción del Congreso que sirvió de marco, ni por la situación constitucional de delegación no revocable por la legislatura, la Legislatura quedó privada de su poder político de legislar con iniciativa sobre materia de procedimiento en cualquier momento en que, como poder esencialmente representativo, lo creyere de rigor. Para considerar a la Legislatura privada de ese poder que, pese a expresiones hechas, históricamente en nuestro pueblo fue siempre una facultad inherente al juicio y discernimiento legislativos y no de los propios jueces, necesitaría yo leer en la Constitución un mandato de despojo expreso y específico a tal fin, y no lo que pueda presumirse por implicación del texto de la Sec. 6 del Art. V. El concederle una facultad al Tribunal Supremo sin una expresión más específica de otorgarse exclusivamente, no destruye a mi juicio la iniciativa del poder Legislativo inherente a su poder político.

A lo sumo, entiendo que la Constitución permitió una concurrencia de acción de los dos poderes. Y también me es claro que, al igual que durante el período que le precedió, la Con-

---

(6) La Ley Núm. 465 de 25 de abril de 1946 fue derogada por la Núm. 25 de abril 15, 1948.

vención Constituyente pudo querer que esa iniciativa de ordinario se usara por el Tribunal Supremo por creerlo deseable según el régimen y modo de acción adoptado en 1941 y que, como entendemos que quiso decir el Sr. Ramos Antonini, invita a la Legislatura a cierta prudente abstención, bajo criterios de buen juicio y en ausencia de situaciones extraordinarias, de anticipar su iniciativa. No quiere ello decir a mi juicio que la Asamblea Legislativa constitucionalmente no pueda, cuando las circunstancias lo demanden, ejercerla.

Entiendo además que la iniciativa concurrente depositada en el Tribunal Supremo envuelve el procedimiento *stricto sensu*: La materia de ordinario cubierta por las leyes y Códigos de enjuiciamiento como rama del derecho, y que cuando la legislación no tiene lo anterior como su fin, sino que tiene por objeto otros propósitos o el establecer alguna política pública deseable—en este caso la de la Ley Núm. 2 de octubre 17 de 1961—, menos puede decirse que no hay autoridad constitucional aun cuando, para lograr adecuadamente el propósito buscado o política pública deseada sea necesario establecer normas procesales en amplia escala.

En todo ello hay presentes fundamentales consideraciones de orden social. El procedimiento judicial de un pueblo no es cosa que interese sólo a aquel ínfimo sector de la sociedad que en una u otra ocasión es litigante o que acude o se le lleva ante los tribunales. Como expresara Montesquieu en su *Sprit de Lois*, las reglas procesales interesan al género humano más que cualquier otra cosa que pueda haber en el mundo.

En verdad, las formas procesales están revestidas del mayor interés público ya que según sean, así pueden representar o no las de un sistema de protección y privilegios para unas clases o castas y de opresión o desamparo para otras menos fuertes o afortunadas. En el enjuiciamiento del ofensor—la mayoría de las veces el delincuente procede de aquel lecho social más desvalido y menos poderoso, producto en

gran parte de las graves fallas y omisiones trágicas del cuerpo social mismo—pueden representar un pueblo bárbaro o un pueblo civilizado. Quizás nada hable mejor del alto grado de refinación cultural de una sociedad que la medida en que ha logrado depurar sus normas de procedimiento, tanto en lo civil como en lo criminal, que a mayor grado de depuración, mayor purificación de la conciencia colectiva.

Entiendo por eso, aunque se ha entendido de otra manera por muchos, que las formas procesales no son meras fórmulas técnicas de agilidad mental producto de la tecnología jurisperita. Llevan, por el contrario, toda la carga social y política de un pueblo acumulada. De ellas no puedo considerar excluida, a menos que el pueblo en una disposición constitucional así lo dispusiera expresamente, la iniciativa del Legislador cuya representación política, no la del jurisperito, cubre toda la gama de la convivencia social con sus intereses en conflicto. Para hacer valer determinada política pública legislativa en cualquier esfera de acción, una forma procesal puede ser de vital importancia. Sería absurdo pensar que el legislador tendría que paralizar su función allí donde la legislación demandara un procedimiento, por falta de iniciativa. La Ley Núm. 2 de 17 de octubre de 1961, como otros estatutos vigentes que demandan formas procesales, la ley de tránsito por ejemplo, envuelve políticas públicas que el legislador creyó deseables, y son válidas a mi juicio aunque en ello tuviera que crear procedimiento.

En el segundo aspecto del caso, debo disentir. Todo indica que, precisamente, la Ley Núm. 2 de 1961 se debió o pudo deberse a una inconformidad del Legislador con el a mi juicio también demasiado amplio alcance con que el Tribunal aplicó ciertas disposiciones procesales en una reclamación o querella de obreros, en *Sierra* v. *Tribunal Superior*, 81 D.P.R. 554, decidido el 10 de septiembre de 1959.

Del récord aquí surge que la querella de estos obreros contenía información suficiente. Se acompañó a la misma,

como anexos, una extensa relación que contenía el nombre del reclamante, el período comprendido de trabajo alegado, la cantidad reclamada durante el período a base de salario regular y tiempo de espera y la cantidad a base de días feriados, lo reclamado por vacaciones por cada obrero, las horas diarias trabajadas en cada semana y la cantidad reclamada por la hora del almuerzo. La demanda se radicó el 3 de julio de 1963.

Después de muchos trámites la contestación en los méritos vino a radicarse en 30 de octubre de 1964. En el ínterin, la Sala sentenciadora en 22 de julio de 1964, y se ratificó en 9 de octubre siguiente, declaró sin lugar interrogatorios sometidos por la demandada Dorado Beach Hotel Corporation en que solicitaba información contenida en la demanda. La contestación consiste de una negativa total de que los obreros hubieran sido empleados de la corporación, el ataque de nulidad a la Ley Núm. 2 y una alegación de prescripción.

En las circunstancias del récord, y a la luz de dicho estatuto y de su política pública, entiendo que no debería alterarse la negativa de la Sala sentenciadora, a mi juicio correcta, a ordenar la contestación de interrogatorios, creándose una innecesaria mayor dilación en la decisión del caso. En la forma en que la corporación trabó la contienda de hecho—no eran empleados suyos—podía irse de inmediato a juicio.