La Jueza Asociada Señora Fiol Matta,
emitió la opinión del Tribunal.
El Sr. Carlos Luis Torres (peticionario) nos pide que revoquemos la sentencia del Tribunal de Apelaciones que desestimó su demanda y, por consiguiente, le concedamos el pago en concepto de las vacaciones acumuladas y no utilizadas en exceso del límite de sesenta días establecido en la Ley de Municipios Autónomos del Estado Libre Asociado de Puerto Rico de 1991 (Ley de Municipios Autónomos).
I
El peticionario fue alcalde del municipio de Coamo desde el 7 de enero de 1989 hasta el 13 de enero de 1997, cuando se acogió a la jubilación por edad y años de servicio. En ese momento solicitó que se le pagara la cantidad correspondiente a los días acumulados por razón de las vacaciones regulares y días de enfermedad no utilizados. Según quedó evidenciado en el foro de primera instancia por una certificación no controvertida de la Directora de Recursos Humanos del municipio de Coamo, el peticionario tenía ciento cuarenta y dos días de vacaciones acumuladas.
La administración municipal sólo le entregó la cantidad equivalente a sesenta días de vacaciones y noventa días de enfermedad acumulados, por lo que en misivas de 10 de agosto de 1998 y 22 de agosto de 2001, el peticionario solicitó al municipio que le reembolsara el resto de los días de *546 vacaciones y de enfermedad que tenía acumulados. El municipio se rehusó y fundamentó su negativa en que al momento de la separación por retiro del señor Torres, el organismo municipal no estaba facultado por la Legislatura a pagar más de sesenta días de vacaciones y noventa días por enfermedad no utilizados. Ante la manifiesta controversia, el 5 de octubre de 2001 el municipio le solicitó al Departamento de Justicia una opinión oficial en cuanto a los derechos del ex alcalde.
El 8 de mayo de 2002 el señor Torres presentó una demanda sobre Sentencia Declaratoria y Mandamus contra el municipio de Coamo y su representante, el alcalde Juan Carlos García Padilla, en la cual solicitó que se aclararan los derechos que le cobijaban al amparo de la legislación vigente al momento de su retiro. El municipio solicitó al Tribunal de Primera Instancia que dictara sentencia sumaria en apoyo a su postura. Argumentó que de acuerdo con la legislación vigente al momento en que el peticionario se separó del cargo, el señor Torres sólo podía cobrar el máximo acumulable por ley, es decir, sesenta días de vacaciones y noventa días por enfermedad. El señor Torres se opuso a la solicitud de sentencia sumaria mediante un escrito presentado el 18 de junio de 2002. Por entender que habían hechos materiales en controversia que ameritaban una vista en su fondo, el 10 de julio de 2002 el Tribunal de Primera Instancia declaró “no ha lugar” la solicitud de sentencia sumaria del municipio de Coamo.
El 18 de septiembre de 2002 la Secretaria de Justicia respondió a la solicitud de opinión oficial que le hiciera el municipio de Coamo. Tras una lectura integral de la Ley Núm. 152 de 20 de agosto de 1996 (1996 (Parte 1) Leyes de Puerto Rico 662) y una interpretación de lo resuelto por esta Curia en Rodríguez Cruz v. Padilla Ayala, 125 D.P.R. 486 (1990), determinó que el demandante tenía derecho al pago por el exceso de vacaciones acumuladas sobre el *547 máximo de sesenta días, mas no así al pago del exceso de días por enfermedad.
Entretanto, las partes solicitaron al tribunal que resolviera el pleito sin la celebración de un juicio, pues estaban de acuerdo con que la única controversia que habría de resolverse era si el Señor Torres tenía derecho a recibir el pago de sus vacaciones y días de enfermedad acumulados en exceso del máximo dispuesto en la ley. El Tribunal de Primera Instancia accedió a la petición de los litigantes y, tras recibir sus respectivos memorandos de derecho, decidió favorecer la causa del señor Torres, por lo que dictó sentencia a su favor. Para llegar a dicha determinación, el tribunal acudió a la doctrina del caso Rodríguez Cruz v. Padilla Ayala, supra, que estableció que los excesos acumulados y no disfrutados por necesidad de servicio no deben resultar en perjuicio de los empleados. Según la interpretación del Foro de Primera Instancia, tal doctrina indica que para evitar un enriquecimiento injusto procede el pago de las cantidades correspondientes al exceso de vacaciones. Asimismo determinó el tribunal que la Ley Núm. 152, supra, vigente desde el 1 de julio de 1997, aplicaba al señor Torres en cuanto al exceso de vacaciones, pero no en cuanto al exceso de días acumulados de enfermedad. Por ambos motivos ordenó al municipio de Coamo a pagar el exceso de vacaciones regulares acumuladas. La sentencia que así dispone fue dictada el 13 de abril del 2004 y archivada en los autos con copia de su notificación el 18 de mayo de 2004.
El 13 de julio de 2004 el municipio de Coamo, inconforme con tal dictamen, recurrió ante el Tribunal de Apelaciones. En su recurso de apelación expresó, entre otras cosas, que el Tribunal de Primera Instancia había errado al aplicar el caso Rodríguez Cruz v. Padilla Ayala, supra, y la Ley Núm. 152, supra, cuya vigencia es posterior a la fecha del retiro del peticionario. El Tribunal de Apelaciones revocó al foro de primera instancia al entender que *548 la doctrina de Rodríguez Cruz v. Padilla Ayala, supra, sólo le aplica a empleados que respondan a un patrono, y no a un alcalde, quien no es subordinado de nadie. Entendió, además, el foro apelativo que no se había probado a su satisfacción alguna necesidad del servicio que justificara la acumulación excepcional de vacaciones durante el periodo de la incumbencia del peticionario.
El 10 de marzo de 2005, el peticionario Carlos Luis Torres Santiago presentó su solicitud de certiorari ante esta Curia. El 27 de mayo de 2005 emitimos una Orden para Mostrar Causa, por la cual no debíamos revocar la sentencia recurrida. La parte recurrida compareció en cumplimiento de esta orden. Con el beneficio de ambos alegatos, estamos listos para resolver.
II
Dada la aspiración de la Ley de Municipios Autónomos, que pretende tanto descentralizar el gobierno como encarnar principios cardinales democráticos de participación ciudadana, se declaró al municipio como “unidad básica para la administración comunitaria”. La implementación de dicha política pública descentralizadora trajo un grado mayor de autonomía, mejores herramientas financieras y una ampliación del marco de acción del municipio a áreas que le estaban vedadas o grandemente limitadas en el pasado. Véanse: Exposición de Motivos y Art. 1.002 de la Ley de Municipios Autónomos, 1991 (Parte 1) Leyes de Puerto Rico 459; López v. Mun. de Mayagüez, 158 D.P.R. 620 (2003); Mun. San Juan v. Banco Gub. Fomento, 140 D.P.R. 873, 885 (1996).
Como parte de la autonomía que le fuera conferida a los municipios, la Ley de Municipios Autónomos, en su anterior Art. 12.027, actual Art. 11.028 (21 L.P.R.A. sec. 4577), excluyó expresamente al personal municipal de la *549 aplicación de la ya derogada Ley Núm. 5 de 14 de octubre de 1975, conocida como la Ley de Personal de Servicio Público de Puerto Rico, 3 L.P.R.A. sees. 1301—1431, hoy Ley Núm. 184 de 3 de agosto de 2004, conocida como Ley para la Administración de los Recursos Humanos en el Servicio Público del Estado Libre Asociado de Puerto Rico, 3 L.P.R.A. see. 1461 et seq. De esta manera, la Ley de Municipios Autónomos se convirtió en la fuente de derecho principal para dilucidar las controversias relativas al personal municipal. López v. Mun. de Mayagüez, supra; Rivera Ortiz v. Mun. de Guaynabo, 141 D.P.R. 257 (1996). Es decir, las disposiciones sobre personal que aplican a los municipios son las de los Arts. 11.001-11.030 de la Ley de Municipios Autónomos, 21 L.P.R.A. secs. 4551-4579. Ortiz y otros v. Mun. de Lajas, 153 D.P.R. 744 (2001).
La Ley de Municipios Autónomos estableció un sistema de personal similar al dispuesto para las agencias de gobierno en la Ley de Personal del Servicio Público de Puerto Rico, actual Ley para la Administración de los Recursos Humanos en el Servicio Público del Estado Libre Asociado de Puerto Rico, por lo que es imperativo reiterar que consecuentemente hemos aplicado la jurisprudencia dimanante de casos presentados al amparo de estas leyes a los empleados municipales. López v. Mun. de Mayagüez, supra, págs. 628-629.
El Capítulo 12 de la Ley de Municipios Autónomos comprende todo lo concerniente al funcionamiento de un sistema de personal responsivo a las necesidades particulares y a la estructura administrativa de los municipios. Rivera Ortiz v. Mun. de Guaynabo, supra, pág. 265. El sistema de personal de la Ley de Municipios Autónomos consiste en una serie de disposiciones de la administración de personal incluida en una ley orgánica que se concentra en la delegación de poderes gubernamentales a los municipios. Ese sistema de personal provee a dichos organismos un esquema general para la administración de sus empleados. *550 Ortiz y otros v. Mun. de Lajas, supra, pág. 754, citando a R.L. Nieves, La participación ciudadana en la Ley de Municipios Autónomos de 1991: un laboratorio de posibilidades democráticas para Puerto Rico, 67 (Núm. 3) Rev. Jur. U.P.R. 467, 484 (1998).
Un aspecto regulado por nuestra legislación laboral es la concesión de beneficios marginales a los trabajadores. Entre dichos beneficios se encuentran las licencias de vacaciones y de enfermedad, concedidas a los trabajadores por imperativos de política pública firmemente establecidos y originarios de las fervientes luchas obreras de antaño. El beneficio de las vacaciones representa un hito más en la lucha por la emancipación de los asalariados. En opiniones anteriores hemos expresado que el propósito de las vacaciones es concederle al empleado un período de descanso que le ayude a reparar periódicamente las fuerzas físicas y mentales que el diario trajín agota, así como brindarle la ocasión de compartir ratos de tranquilidad y sosiego con su familia. Las vacaciones son la única oportunidad que tiene el trabajador para poder gozar de días completos en la compañía de su familia durante un período razonable. Ramos Villanueva v. Depto. de Comercio, 114 D.P.R. 665, 666 (1983); Rivera Maldonado v. Autoridad Sobre Hogares, 87 D.P.R. 453, 456 (1963).
En el caso Sucn. Álvarez v. Srio. de Justicia, 150 D.P.R. 252, 270-271 (2000), tuvimos la oportunidad de ex-presarnos sobre el significado particular de las licencias de vacaciones y de enfermedad. Explicamos que la licencia de vacaciones tiene como propósito ofrecer al funcionario un periodo de descanso y distracción que lo releve temporalmente de las labores y responsabilidades inherentes a su cargo, sin pérdida de los emolumentos correspondientes. Antes, en Rivera Maldonado v. Autoridad Sobre Hogares, supra, pág. 457, habíamos expresado que el empleado debe disfrutar de sus vacaciones como cuestión de interés público, pues no sólo está implicado su bienestar, sino el de la *551 comunidad en general. Por eso se promueve que el empleado tome sus vacaciones cada año y no las acumule. De hecho, en esa ocasión nos expresamos contra la acumulación de vacaciones y dejamos consignado que
... las autoridades nominadoras deben estar atentas para ofrecer al empleado la oportunidad de disfrutar de las vacaciones que la ley le concede y que dentro de la necesidad del servicio deben insistir en que éstos disfruten anualmente de período de descanso. (Énfasis suplido). Rivera Maldonado v. Autoridad Sobre Hogares, supra, pág. 461.
Vemos entonces que desde 1963 se ha venido forjando una excepción a la norma que promueve el uso anual del período de descanso. La necesidad del servicio constituye la razón para eludir el interés público de que los empleados tomen sus vacaciones, ello por la existencia de otro interés público de mayor jerarquía que radica en la buena administración del país y en la necesidad del buen gobierno. En Díaz González v. Tribunal Superior, 102 D.P.R. 195, 211 (1974), articulamos nuestra concepción del servicio público de la manera siguiente:
Dicha obligación de servir se basa en la lealtad al país, a la Constitución, al ideal de la primacía de la ley sobre la posible arbitrariedad humana, al respeto a la dignidad [de las personas], en el sano orgullo o espíritu profesional del servidor público, y en suma, en los altos valores del espíritu.
En el contexto de los municipios, hemos reiterado la importancia de las funciones del alcalde en la estructura y el funcionamiento de una célula social tan vital como lo es un municipio.(1) En efecto, el alcalde es la figura central en la administración pública y la sociología política *552 de la comunidad municipal. P.P.D. v. Planadeball Poggy, 121 D.P.R. 570, 575 (1988); Gobernador de P.R. v. Alcalde de Juncos, 121 D.P.R. 522, 531-532 (1988), citando a E. Córdova, Curso de Gobierno Municipal, Río Piedras, Ed. Universitaria, 1964, págs. 195-198, y a C.J. Antieau, Municipal Corporation Law, Nueva York, Ed. Matthew Bender, 1979, Sec. 22.194.
Por eso hemos sido enfáticos al expresar nuestra opinión sobre la importancia de la figura del alcalde en nuestro sistema democrático. Al respecto, este Tribunal ha recalcado los imperativos de política pública sobre la mejor administración pública que debe imperar en los municipios, y a esos efectos hemos hecho hincapié en la necesidad de certeza, estabilidad y continuidad en el descargo de las funciones del alcalde y la prestación ininterrumpida de los servicios municipales. En Gobernador v. Alcalde de Coamo, 131 D.P.R. 614, 624 (1992), citando a Rodríguez Rivera, Alcalde v. Comisión, 84 D.P.R. 68, 76 (1961), dijimos que el “ 'alcalde realiza en Puerto Rico una importante y delicada misión. Suya es la responsabilidad de dirigir y orientar la cosa pública dentro de normas de estricto orden y rectitud intachable’ ”. (Énfasis suprimido.)
En su libro, Córdova nos explica dos proyecciones que tiene la figura del alcalde en la sociedad. Por un lado está la proyección paternalista o extralegal, y por otro lado está la proyección administrativa. En su dimensión paternalista,
...el alcalde, por efecto de la costumbre y por el peso de la tradición, viene a ser ante la imaginación popular una especie de “padre de todos”, una figura cordial y accesible que funge como dispensador de servicios, centro de convergencia de los más variados requerimientos e invitado de honor en eventos cívicos, sociales, deportivos, etc. Córdova, op. cit., pág. 196.
En la otra dimensión, la de su personalidad administrativa, se encuentran las funciones delegadas por la Asamblea Legislativa en leyes como la Ley de Municipios Auto *553 nomos, Ley Núm. 81 de 30 de agosto de 1991 (21 L.P.R.A. sec. 4001 et seq.). El citado autor menciona algunas funciones típicamente delegadas a los alcaldes:
... planificación, organización (incluyendo inspección y supervisión), dirección (incluyendo mando y coordinación), administración específica de personal, administración específica de las finanzas y relaciones públicas, así como que supone el uso de facultades discrecionales y tener la habilidad necesaria para analizar los problemas, tomar decisiones, hacer que ellas se lleven a la práctica, exigir y asumir responsabilidades, delegar actividades, inspirar entusiasmo, impulsar programas y crear espíritu de de cuerpo. Córdova, op. cit., pág. 197.
Tras la implementation de la reforma municipal estructurada en la Ley de Municipios Autónomos, la figura del alcalde adquirió un mayor grado de influencia, y con ello un mayor grado de responsabilidad en sus gestiones, tanto administradoras como tradicionales. El alcalde es, según el Art. 3.009 del texto original de la Ley de Municipios Autónomos, 21 L.P.R.A. see. 4199, “la máxima autoridad de la Rama Ejecutiva del gobierno municipal y en tal calidad le corresponderá su dirección y administración y la fiscalización del funcionamiento del municipio”. Sus facultades y deberes son amplios, conforme al ministerio para el que ha sido electo y de acuerdo con la estructura de gobierno que estableció la mencionada Ley de Municipios Autónomos, cuya Exposición de Motivos establece:
Delegar responsabilidad mediante esta legislación y colocar en el pueblo la obligación de exigir cumplimiento a los alcaldes cada cuatro años por el trabajo que han realizado, debe ser el marco de referencia en que habrán de moverse en el futuro nuestros Municipios. 1991 Leyes de Puerto Rico 560.
De lo anterior se colige el gran interés público, tanto en retener a dicho funcionario en el más cabal cumplimiento de sus polifacéticos menesteres, como en promover su constante y persistente presencia. En la sentencia recurrida, el Tribunal de Apelaciones así lo reconoce y acepta que
*554 ... un alcalde no está sujeto a un horario de trabajo fijo y que su labor como primer ejecutivo municipal demanda esfuerzos heroicos tanto de día como de noche y de madrugada, así como sábados, domingos y días feriados.
III
Al momento en que el peticionario se separó de su cargo, el Art. 12.016 de la Ley de Municipios Autónomos, según enmendado, 21 L.P.R.A. see. 4566 (ed. 1995),(2) disponía, en lo pertinente, lo siguiente en cuanto a la concesión de licencias por vacaciones y enfermedad:
Beneficios marginales-Días feriados y licencias
Los empleados municipales tendrán derecho, adicionalmente a los beneficios marginales que se establecen por leyes especiales, incluyendo las disposiciones vigentes sobre días feriados, a los siguientes:
(b) Licencias. —
(1) Licencia de vacaciones. — Los empleados de carrera, de confianza y transitorios tendrán derecho a acumular licencia de vacaciones a razón de dos días y medio (2 1/2) por cada mes de servicio. Los empleados a jornada parcial acumularán dicha licencia en forma proporcional al número de horas en que presten servicios regularmente.
Cada organismo municipal deberá preparar y administrar un plan de vacaciones en la forma más compatible posible con las exigencias del servicio y que evite que los empleados acumulen licencia en exceso del máximo permisible por año natural.
Todo empleado podrá acumular vacaciones hasta un máximo de sesenta (60) días laborables al finalizar cada año natural. Si por necesidad del servicio no puede disfrutar de la licencia acumulada, la autoridad nominadora municipal le deberá conceder cualquier exceso del límite de sesenta (60) días dentro de los primeros seis (6) meses del siguiente año natural. La autoridad nominadora deberá tomar las medidas necesarias para conceder el disfrute de vacaciones empleado siempre *555 que sea posible. El alcalde adoptará, a través de su Oficina de Recursos Humanos, las normas que regirán cuando sea la necesidad de anticipar licencia de vacaciones a empleados.
Cuando las circunstancias y méritos del caso lo justifiquen, se podrá autorizar a cualquier empleado a utilizar las vacaciones acumuladas por un período mayor de treinta (30) días y hasta un máximo de sesenta (60) en cualquier año natural.
(2) Licencia por enfermedad. — Todo empleado de carrera, de confianza y transitorio tendrá derecho a licencia por enfermedad a razón de un día y medio (1 1/2) por cada mes de servicio. Los empleados a jornada parcial acumularán licencias por enfermedad en forma proporcional al número de horas en que presten servicios.
Los empleados del servicio de trabajadores que durante cualquier año natural hayan prestado servicios por un período de seis (6) meses o más tendrán derecho a acumular licencia de enfermedad a razón de uno y medio (1 1/2) días por cada mes trabajado y licencia de vacaciones a razón de dos y medio (2 1/2) días por cada mes trabajado.
La licencia por enfermedad se utilizará exclusivamente cuando el empleado se encuentre enfermo, incapacitado o ex-puesto a una enfermedad contagiosa que requiera su ausencia del trabajo para su protección o la de otras personas. La autoridad nominadora podrá exigirle al empleado un certificado médico expedido por un médico autorizado a ejercer la medicina en Puerto Rico donde se certifique que estaba incapacitado para el trabajo durante el período de ausencia.
La licencia por enfermedad se podrá acumular hasta un máximo de noventa (90) días laborables al finalizar cualquier año natural. El empleado podrá utilizar toda la licencia por enfermedad que tenga acumulada durante cualquier año natural. (Enfasis suplido.)
El artículo anteriormente transcrito otorga el derecho a acumular vacaciones por encima del límite de sesenta días, según las circunstancias excepcionales que mencionamos anteriormente y que se circunscriben a la necesidad del servicio. En Muñoz Hernández v. Policía de P.R., 134 D.P.R. 486, 495 (1993), al comentar una disposición análoga, dijimos que ésta tiene el propósito primordial de evitar que los servidores públicos pierdan sus vacaciones acumuladas cuando por necesidades del servicio no puedan disfrutarlas durante el año. Dicho beneficio favo *556 rece al servicio público, pues no obliga a que se tengan que conceder, indefectiblemente, vacaciones anuales a todos los empleados. Esta flexibilidad evita que se perjudique el servicio público en ciertas circunstancias, pues permite que el empleado o funcionario continúe cumpliendo con el deber que el servicio público requiere de su persona con la tranquilidad de saber que está acumulando sus vacaciones para el momento oportuno en que las necesidades del servicio le permitan el descanso.
Por otro lado, cuando el empleado o funcionario se separa definitivamente del empleo, el Art. 12.020 (hoy Art. 11.021) de la Ley de Municipios Autónomos, 21 L.P.R.A. see. 4570 (ed. 1995), preceptúa el pago global por licencia acumulada, y dispone:
Al renunciar a su puesto, o a la separación definitiva del servicio público por cualquier causa, todo funcionario o empleado municipal tendrá derecho a percibir, y se le pagará en un término no mayor de treinta (30) días, una suma global de dinero por la licencia de vacaciones que tuviere acumulada a la fecha de su separación del servicio, hasta un máximo de sesenta (60) días laborables.
De igual forma, a todo funcionario y empleado municipal se le pagará la licencia por enfermedad que tenga acumulada, hasta un máximo de noventa (90) días laborables, a su separación del servicio para acogerse a la jubilación si es participante de algún sistema de retiro auspiciado por el Gobierno del Estado Libre Asociado de Puerto Rico. Si no lo fuere a su separación definitiva del servicio, debe haber prestado, por lo menos, diez (10) años de servicios. Esta suma global por concepto de ambas licencias se pagará a razón del sueldo que el funcionario o empleado esté devengando al momento de su separación del servicio, independientemente de los días que hubiere disfrutado de estas licencias durante el año.
Se faculta a la autoridad nominadora para autorizar tal pago.
El Art. 2.016, supra, transcrito anteriormente, se refiere a “empleados de carrera, de confianza y transitorios”, mientras que el Art. 12.020, supra, se refiere a todo funcionario o empleado municipal. La Ley de Municipios Autóno *557 mos distingue los conceptos “empleado municipal” y “funcionario municipal” en su Art. 1.003 (21 L.P.R.A. see. 4001):
(n) Empleado. — Significará toda persona que ocupe un puesto y empleo en el gobierno municipal que no esté investido de parte de la soberanía del gobierno municipal y comprende los empleados regulares, irregulares, de confianza, empleados con nombramientos transitorios y los que estén en período probatorio.
(q) Funcionario municipal. — Significará toda persona que ocupe un cargo público electivo de nivel municipal, el Secretario de la Legislatura y los directores de las unidades administrativas de la Rama Ejecutiva Municipal.
Una lectura conjunta y restrictiva del articulado podría llevarnos a concluir que un alcalde o funcionario municipal, a diferencia de un empleado municipal, no puede acumular vacaciones en exceso de los sesenta días ni disfrutar de dicho exceso en los primeros seis meses del próximo año natural, aunque por necesidad del servicio no pudiera tomarse el período de descanso al cual tiene derecho. Dicha lectura literal obligaría a los alcaldes a tomarse vacaciones anualmente, cosa que puede resultar incompatible con los deberes de su función. Según la letra de los estatutos al momento de los hechos en controversia, tampoco serían compensados los empleados ni funcionarios, al separarse del servicio, por sus vacaciones acumuladas en exceso de los sesenta días.
No podemos conferirle una interpretación tan restrictiva a un estatuto que, al igual que otras legislaciones laborales, tiene un carácter reparador, por lo que debe tomarse como un instrumento de justicia social. Más aún, cuando la Ley de Municipios Autónomos expresamente establece, como norma, la interpretación liberal de sus disposiciones. Art. 1.004 (21 L.RR.A. sec. 4002); Mun. San Juan v. Banco Gub. Fomento, supra, pág. 886.
En reiteradas ocasiones hemos expresado la regla de interpretación estatutaria aplicable a las leyes labo *558 rales, en cuanto a que deben interpretarse liberalmente, resolviéndose toda duda de la forma más favorable hacia el obrero, para así cumplir con sus propósitos eminentemente sociales y reparadores.(3) La interpretación liberal y abarcadora de estas leyes a favor de aquellos a quienes éstas intentan proteger es imperativa, de modo que dicha protección se extienda al mayor número de casos. Sánchez v. Sylvania Lighting, 167 D.P.R. 247 (2006); Rodríguez v. Syntex, 160 D.P.R. 364 (2003); Muñoz Hernández v. Policía de P.R., supra, pág. 496; R.E. Bernier y J.A. Cuevas Segarra, Aprobación e interpretación de las leyes de Puerto Rico, 2da ed. rev., San Juan, Pubs. J.T.S., 1987, T. I, págs. 455-459. En González v. Adm. de Sistemas de Retiro, 113 D.P.R. 292, 294 (1982), resolvimos que al interpretarse un estatuto de naturaleza reparadora, no es la letra de la ley, sino su espíritu, lo que determina su significado.(4)
En Piñan v. Mayagüez Sugar Co., Inc., 84 D.P.R. 89 (1961), claramente establecimos la norma de que la ex-clusión de un empleado de los beneficios de la legislación laboral, por tratarse de un ejecutivo, debe ser clara. En *559 dicho caso impusimos una interpretación restrictiva a las exclusiones de beneficios y adoptamos la doctrina establecida en Mitchell v. Kentucky Finance Co., 359 U.S. 290, 295 (1959), y Dalehite v. United States, 346 U.S. 15, 31 (1953). El extender una exención a aquellos que no estén claramente excluidos, según la letra o según el espíritu de la ley, constituirá un abuso del proceso de interpretación o una frustración de la voluntad expresada por el pueblo. Sierra, Comisionado v. Llamas, 73 D.P.R. 908, 916 (1952), citando a Phillips Co. v. Walling, 324 U.S. 490 (1945).(5)
Siguiendo el mismo razonamiento, no podemos permitir que una lectura literal nos lleve a la conclusión de que el Art. 12.016, supra, no incluye a los funcionarios municipales.(6) Como es sabido, se debe evitar una interpretación literal que conduzca a resultados irrazonables o absurdos, o que dé lugar a distinciones que carezcan de una base racional. Pueblo v. Zayas Rodríguez, 147 D.P.R. 530, 537-539 (1999); Ready Mix Concrete v. Comisión Industrial, 92 D.P.R. 37, 41 (1965).(7)
Según la regla de interpretación in pari materia, presente en nuestra jurisprudencia desde hace más de un *560 siglo, las secciones, los artículos o los apartados de una ley, y las diversas leyes relacionadas entre sí por su objetivo o propósito, no deben ser interpretadas separadamente, sino refiriéndose las unas a las otras como un todo, buscando la intención legislativa. En otras palabras, deben ser tratadas como un todo armónico, leyéndolas en conjunto, no interpretando aisladamente sus disposiciones. Mun. de San Juan v. Banco Gub. Fomento, supra, pág. 884; Marina Ind., Inc. v. Brown Boveri Corp., 114 D.P.R. 64, 90 (1983); Ex parte Bird, 5 D.P.R. 247, 265 (1904); Op. Sec. Just. Núm. 1993-31 de 22 de noviembre de 1993.(8)
En cuanto a si procede o no acumular vacaciones más allá de los sesenta días que establece el estatuto como límite para el pago global, el caso Rodríguez Cruz v. Padilla Ayala, supra, si bien no resuelve la controversia que hoy atendemos, arroja luz sobre el camino que debemos tomar. En aquella ocasión el empleado señor Rodríguez exigía el pago del exceso de vacaciones que por necesidad del servicio tuvo que acumular. La necesidad del servicio quedó sostenida por la prueba que presentó el señor Rodríguez, que demostró que su patrono no le permitió tomarse las vacaciones en su momento ni permitió disfrutar del exceso acumulado dentro de los primeros seis meses del próximo año natural. El señor Rodríguez no se había separado de su empleo, sino que se había transferido a otro puesto dentro del servicio público, por lo cual no procedía, según resolvimos, el pago global por licencia acumulada, y ordenamos que se le permitiera al señor Rodríguez disfrutar del ex-ceso de vacaciones con paga, ello para evitar que los actos del municipio, su entonces patrono, le afectaran su derecho al descanso. Así lo expresamos: “No debemos penalizarle por la falta de diligencia del municipio. Además, de otro *561 modo, el municipio se beneficiaría del incumplimiento de su deber”.
Aun cuando el caso antes discutido no lo formulara ex-presamente, es evidente el ánimo justiciero y la aspiración de equidad que subyace la opinión. Así lo ha interpretado el Departamento de Justicia, que a través de opiniones emitidas por distintos Secretarios ha expresado que el caso Rodríguez Cruz v. Padilla Ayala, supra, pretende evitar un enriquecimiento injusto por parte del municipio a costa de la necesidad del servicio público. Véanse: Op. Sec. Just. 2002-16 de 18 de septiembre de 2002; Op. Sec. Just. Núm. 1992-29 de 1 de diciembre de 1992. En la última opinión citada, el Secretario de Justicia se expresó así:
Es de notar que el Tribunal [en Rodríguez Cruz v. Padilla Ayala, supra,] ordenó que el empleado en cuestión disfrutara, pero no se le pagara, la totalidad de la licencia de vacaciones acumulada, inclusive el exceso sobre el límite máximo de 60 días, porque no hubo desvinculación del servicio. Por consiguiente, resulta razonable inferir que en el caso contrario, es decir, si hubiera ocurrido tal desvinculación del servicio, el Tribunal habría ordenado el referido pago total. ...
Es preciso advertir, sin embargo, que esta norma no establece derechos nuevos o adicionales, sino que más bien constituye un remedio para los casos en que, por necesidades del servicio, los organismos gubernamentales no puedan proveer para el disfrute adecuado de la licencia de vacaciones acumulada de sus empleados. Por consiguiente, dicho remedio solo procederá en casos excepcionales, en los cuales las circunstancias prevalecientes en el organismo gubernamental, así como la naturaleza de las funciones que desempeña el empleado, hacen imprescindible su presencia continua en el lugar de trabajo, por necesidades inaplazables del servicio. (Enfasis suplido y escolio omitido.) Op. Sec. Just. Núm. 1992-29, supra, pág. 166.
De acuerdo con la ya discutida regla de hermenéutica aplicable a la legislación laboral, en Matos Nazario v. A.C., 154 D.P.R. 2, 24-27 (2001), resolvimos que aunque una agencia no tenga reglamentación aprobada en cuanto al pago del exceso en concepto de licencias acumuladas, si *562 recibió los servicios del empleado, le corresponde satisfacer el pago por el exceso de dichas licencias de vacaciones y enfermedad acumulado mientras éste rindió servicios. En dicha ocasión la agencia tenía un carácter análogo al de los municipios, pues en virtud de su ley habilitadora era un “administrador individual” en asuntos de personal. Nuestra opinión se fundamentó en dos razones: en primer lugar, que el reglamento de la agencia no prohibía el pago del exceso; en segundo término, la necesidad de evitar una situación de enriquecimiento injusto por parte de dicha agencia y en peijuicio del empleado, que no podría recibir dicha compensación de otra manera. (9) Así, quedó claramente establecido en nuestra jurisprudencia que, cuando no se permite el disfrute de la licencia de vacaciones acumuladas y luego tampoco se permite el pago de dicha licencia, nos enfrentamos a una situación de enriquecimiento injusto por parte del organismo gubernamental concernido.(10)
*563 Es importante aclarar que un remedio en equidad como el que hoy concedemos tiene tanto su razón de ser como sus confines en la buena fe del reclamante. Según opinamos en E.L.A. v. Cole, 164 D.P.R. 608, 643 (2005):
No podemos validar la erogación de fondos públicos para satisfacer el sueldo, los bonos y las licencias por vacaciones y por enfermedad a un empleado municipal cuando éste no realizó labor alguna destinada a su empleo en el municipio .... Esto constituye un claro ejemplo del uso indebido de fondos públicos que prohíbe nuestra Constitución. Como máximos intérpretes de ésta, es nuestro deber y responsabilidad velar por que dichos fondos respondan directamente a las necesidades de la ciudadanía .... (Enfasis suprimido.)
Por tal razón debemos advertir que, en casos como el de autos, una petición de pago de los excesos de sesenta días de vacaciones debe estar acompañada por evidencia fehaciente que establezca la necesidad del servicio por la cual el empleado o funcionario no haya podido disfrutar de sus vacaciones. El peticionario presentó como evidencia de las vacaciones acumuladas una certificación suscrita por Mirna Cardona Correa, directora interina del Departamento de Recursos Humanos, con fecha de 31 de diciembre de 1996. Según la certificación, el peticionario dejó de disfrutar de ciento cuarenta y dos días de vacaciones entre 1991 y 1996 por exceso de trabajo, equivalente a $25,773 de acuerdo con el sueldo que recibía el peticionario mientras era alcalde. Dicha certificación no fue refutada por los recurridos y constituyó evidencia suficiente y preponderante para establecer la necesidad del servicio, según el juicio del Tribunal de Primera Instancia.(11)
*564 Al tomar en consideración la función del alcalde en nuestro sistema democrático y en la estructura de gobierno de nuestro país, nos parece indudable la necesidad del servicio constante de dicha figura. De acuerdo con la interpretación liberal que nos imponen tanto la Ley de Municipios Autónomos como nuestra legislación laboral, revocamos en parte el dictamen del Tribunal de Apelaciones y ordenamos al municipio de Coamo a satisfacer el pago correspondiente al exceso de sesenta días que el peticionario acumuló mientras estaba en servicio como alcalde de dicho municipio.

Se dictará sentencia de conformidad.

La Juez Asociada Señora Rodríguez Rodríguez concurrió con el resultado sin opinión escrita. Los Jueces Asociados Señores Fuster Berlingeri y Rivera Pérez no intervinieron.

 Como dijimos en Rodríguez Cruz v. Padilla Ayala, 125 D.P.R. 486, 510 (1990), citando el texto de Banco Popular v. Mun. de Mayagüez, 120 D.P.R. 692, 696 (1988):
“La razón de ser y finalidad principal de los municipios es ‘satisfacer las necesidades públicas y propias de la comunidad local’. El municipio ‘es un ente mediante el cual el Estado puede atender de manera más efectiva el bienestar social y económico de un conglomerado vecinal específico, de acuerdo con sus necesidades y urgencias en particular’.”

 Por virtud de la Ley Núm. 36 de 13 de abril de 1995, se enmienda por primera vez esta sección. 1995 (Parte 1) Leyes de Puerto Rico 194. Desde 1996 esta sección ha sido objeto de múltiples enmiendas que no aplican al caso que nos ha tocado resolver hoy, pues dichas enmiendas no son de aplicación retroactiva.

 En Muñoz Hernández v. Policía de P.R., 134 D.P.R. 486, 496-497 (1993), con relación a la forma de interpretar los estatutos de carácter reparador o remedial, y sobre lo que constituye una interpretación liberal, acogimos las palabras del tratadista Sutherland quien expresó:
“Remedial statutes are liberally construed to suppress the evil and advance the remedy. The policy that a remedial statute should be liberally construed in order to effectuate the remedial purpose for which it was enacted is firmly established. Expressions of a rule to that effect appear over and over in judicial opinions. What is called a liberal construction is ordinarily one which makes the statutory rule or principle apply to more things or in more situations than would be the case under a strict construction. 3 Sutherland, Statutes and Statutory Construction Sec. 60.01, pág. 147, (5ta ed. 1992).”

 Véanse, también: Otero de Ramos v. Srio. de Hacienda, 156 D.P.R. 876 (2002); Rosario v. Dist. Kikuet, Inc., 151 D.P.R. 634, 644 (2000); Cuevas v. Ethicon Div. J. & J. Prof. Co., 148 D.P.R. 839, (1999); Piñero v. A.A.A., 146 D.P.R. 890 902, (1998); Dorante v. Wrangler of P.R., 145 D.P.R. 408 (1998); Méndez v. F.S.E., 140 D.P.R. 375, 380 (1996); Torres v. Star Kist Caribe, Inc., 134 D.P.R. 1024 (1994); Agosto Serrano v. F.S.E., 132 D.P.R. 866 (1993); Calderón v. Adm. Sistemas de Retiro, 129 D.P.R. 1020, 1034 (1992); Morales v. Adm. Sistemas de Retiro, 123 D.P.R. 589 (1989); Sánchez v. A.S.R.E.G.J., 116 D.P.R. 372, 378 (1985); Villanueva Pérez v. Comisión Industrial, 109 D.P.R. 790 (1980); Caballero v. Sistema de Retiro, 129 D.P.R. 146 (1991); Ruiz Firpo v. A.C.A.A., 109 D.P.R. 1 (1979); Alonso García v. Comisión Industrial, 102 D.P.R. 733 (1974).

 Véanse, también: Calderón v. Esso Standard Oil Co., 92 D.P.R. 129 (1965); Lopez Vega v. F. Vega Otero, Inc., 103 D.P.R. 175 (1974): R.E. Bernier y J.A. Cuevas Segarra, Aprobación e interpretación de las leyes en Puerto Rico, 2da ed. rev., San Juan, Pubs. J.T.S., 1987, T. I, pág. 313.

 La Ley Núm. 291 de 21 de agosto de 1999 (21 L.P.R.A. see. 4566) fue adoptada precisamente con el propósito de aclarar el aparente contrasentido entre los Arts. 12.016, actual Art. 11.016 (21 L.P.R.A. see. 4566), y el Art. 12.020, actual Art. 11.021 (21 L.P.R.A. see. 4570), de la Ley de Municipios Autónomos del Estado Libre Asociado de Puerto Rico de 1991 (Ley de Municipios Autónomos). Así, en su Exposición de Motivos expresa lo siguiente:
“... el artículo 12.020 pone de manifiesto la intención legislativa relativa a que todo funcionario o empleado municipal pueda gozar del derecho a acumular licencia de vacaciones ....
“Habiéndonos percatado del contrasentido de los artículos referentes a la acumulación de licencia de vacaciones, es la intención de la presente Asamblea Legislativa clarificar que todo funcionario tiene derecho a disfrutar de licencia de vacaciones y a acumular dicha licencia cuando por necesidades del servicio no pueden disfrutarla.” (Énfasis suplido.) 1999 (Parte 2) Leyes de Puerto Rico 1269-1270.

 Véanse, también: Otero de Ramos v. Srio. de Hacienda, supra, pág. 884; A.D. Miranda, Inc. v. Falcón, 83 D.P.R. 735, 745 (1961).

 Véanse, también: Delgado v. D.S.C.A, 114 D.P.R. 177, 182 (1983), citando a Cirino v. Fuentes Fluviales, 91 D.P.R. 608, 616 (1964); Andino v. Fajardo Sugar Company, 82 D.P.R. 85, 94 (1961).

 El reglamento de la agencia disponía que los empleados podían acumular licencia de vacaciones hasta un máximo de sesenta días laborables y hasta un máximo de noventa días por enfermedad. No obstante, dicho reglamento no proveía —-ni prohibía— para el pago en efectivo del exceso por días acumulados en licencias de vacaciones y enfermedad.

 En este contexto, y a pesar de que no aplica al presente caso, nos parece importante recalcar que la Ley Núm. 152 de 20 de agosto de 1996, que entró en vigencia en julio del 1997, añadió al Art. 12.016 de la Ley de Municipios Autónomos el párrafo siguiente:
“Se faculta a los organismos municipales a pagar al empleado vacaciones acumuladas en el año natural en exceso del límite máximo autorizado por ley, vía ex-cepción, cuando por circunstancias extraordinarias del servicio ajenas a su voluntad, el empleado no ha podido disfrutar la misma durante los seis (6) meses siguientes al año natural que refleja el exceso. De acontecer dicha situación, el empleado podrá optar por autorizar al organismo municipal concernido a transferir al Departamento de Hacienda cualquier cantidad monetaria por concepto del balance de licencia de vacaciones acumuladas en el año natural en exceso del límite máximo autorizado por ley, a fin de que se acredite la misma como pago completo o parcial de cualquier deuda por concepto de contribuciones sobre ingreso que tuviere al momento de autorizar la transferencia.” 21 L.P.R.A. see. 4566.
Dicha enmienda a la Ley de Municipios Autónomos también facultó a la autoridad nominadora para autorizar, sobre el pago global de licencia acumulada, Art. 12.020, lo siguiente:
"... o cualquier balance en exceso no disfrutado por necesidad del servicio y que no haya sida pagado por el municipio según lo dispuesto en la sec. 4566(b) de este título para circunstancias extraordinarias, vía excepción.” 21 L.P.R.A. see. 4570.

 El 28 de febrero de 1998, la Oficina del Comisionado de Asuntos Municipales (OCAM) emitió el Memorando circular Núm. 98-03, mediante el cual establece los requisitos evidenciarlos que a la luz de la enmienda impuesta por la Ley Núm. 152, supra, se requieren para establecer “necesidad del servicio” que justifique el pago del exceso de vacaciones a un alcalde. Al respecto, OCAM establece tres maneras de probar la necesidad del servicio:
a. Mediante certificación bajo juramento del Director de Recursos Humanos del municipio donde se exprese que el Alcalde no pudo disfrutar sus licencias por necesidad del servicio;
*564 b. Mediante resolución de la Asamblea Municipal reconociendo este hecho o,
c. Mediante la combinación de los mecanismos antes mencionados.